Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio ▾

Dayton Division

Richard Lee Simkins III ）
）
）
_____ ）
*Plaintiff(s)* ）
(Write the full name of each plaintiff who is filing this complaint. ）
If the names of all the plaintiffs cannot fit in the space above, ）
please write "see attached" in the space and attach an additional ）
page with the full list of names.) ）
**-v-** ）
）
Chirstopher McIntosh, Joshua Spears, EmCare, ）
Shawn Louis Marien, Shannon Ravine, Andrew ）
Brochu, Adan Fuentes, Stephanie Horne, Loredel ）
Corneja, Andrew Lane, et al (see attached) ）
_____ ）
*Defendant(s)* ）
(Write the full name of each defendant who is being sued.  If the ）
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)

Case No. ____3:19-CV-227____

*(to be filled in by the Clerk's Office)*

Judge Walter H. Rice

Magistrate Judge Michael J. Newman

## COMPLAINT AND REQUEST FOR INJUNCTION

I.  **The Parties to This Complaint**

  A.  **The Plaintiff(s)**

  Provide the information below for each plaintiff named in the complaint.  Attach additional pages if
  needed.

| | |
|---|---|
| Name | Richard Lee Simkins III |
| Street Address | 51 Huffman Ave Apt A |
| City and County | Dayton Montgomery |
| State and Zip Code | Ohio, 45403 |
| Telephone Number | 937-580-1680 |
| E-mail Address | richardlsimkins1971@gmail.com |

  B.  **The Defendant(s)**

  Provide the information below for each defendant named in the complaint, whether the defendant is an
  individual, a government agency, an organization, or a corporation.  For an individual defendant,
  include the person's job or title *(if known)*.  Attach additional pages if needed.

# United States District Court

for the

## Southern District of Ohio

Dayton Divison

Attachement of Addional and Complete Defendant List

Christopher Mcintosh, Dayton Police Officer Joshua Spears, Shawn Louis Marien, Andrew Brochu, Loredel E Corneja, Adan Fuentes, Shannon Ravine, Stephanie K Horne, Andrew Lane Dayton Police, Kettering Adventist Healthcare, Grandview Medical Center, EmCare, Dayton Police Chief Richard Biehl, Joseph Blake

1

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

Defendant No. 1

| | |
|---|---|
| Name | Christopher McIntosh, DO |
| Job or Title *(if known)* | in C/O Attorney Erin Hess |
| Street Address | 101 W Prospect Ave #1400, |
| City and County | Cleveland  Cuyahoga |
| State and Zip Code | Ohio 44115 |
| Telephone Number | 216-687-2811 |
| E-mail Address *(if known)* | ehess@reminger.com |

Defendant No. 2

| | |
|---|---|
| Name | Joshua Spears |
| Job or Title *(if known)* | Dayton Police Officer |
| Street Address | 1653 Greene Valley Dr. |
| City and County | Beavercreek  Greene |
| State and Zip Code | Ohio  45432 |
| Telephone Number | 937-333-2677 (work) |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | EmCare |
| Job or Title *(if known)* | Corperation |
| Street Address | 13737 Noel Road, Suite 1600 |
| City and County | Dallas  Dallas |
| State and Zip Code | Texas 75240 |
| Telephone Number | 214-712-2000 |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | Shawn Louis Marien |
| Job or Title *(if known)* | DO |
| Street Address | 3103 E Stroop Rd |
| City and County | Kettering, Montgomery |
| State and Zip Code | Ohio 45440 |
| Telephone Number | 937-298-4331. |
| E-mail Address *(if known)* | See Attached additional Defendants listed |

| Defendant No. 5 | Andrew Brochu |
| Job, Title, or Attorney | Attorney of record Tim Pepper |
| Street Address | 40 North Main Street Suite 1700 |
| City and County | Dayton Montgomery |
| State and Zip | Ohio 45423-1029 |
| Telephone Number | (937) 228-2838 |
| email: | pepper@taftlaw.com |

| Defendant No. 6 | Loredel E Corneja |
| Job, Title, or Attorney | Attorney of record Tim Pepper |
| Street Address | 40 North Main Street Suite 1700 |
| City and County | Dayton Montgomery |
| State and Zip | Ohio 45423-1029 |
| Telephone Number | (937) 228-2838 |
| email: | pepper@taftlaw.com |

| Defendant No 7. | Shannon Ravine |
| Job, Title, or Attorney | Attorney of record Tim Pepper |
| Street Address | 40 North Main Street Suite 1700 |
| City and County | Dayton Montgomery |
| State and Zip | Ohio 45423-1029 |
| Telephone Number | (937) 228-2838 |
| email: | pepper@taftlaw.com |

| Defendant No. 8 | Grandview Medical Center |
| Job, Title, or Attorney | Attorney of record Tim Pepper |
| Street Address | 40 North Main Street Suite 1700 |
| City and County | Dayton Montgomery |
| State and Zip | Ohio 45423-1029 |
| Telephone Number | (937) 228-2838 |
| email: | pepper@taftlaw.com |

| Defendant No. 9 | Kettering Adventist Healthcare |
| Job, Title, or Attorney | Attorney of record Tim Pepper |
| Street Address | 40 North Main Street Suite 1700 |
| City and County | Dayton Montgomery |
| State and Zip | Ohio 45423-1029 |
| Telephone Number | (937) 228-2838 |
| email: | pepper@taftlaw.com |

1

Defendant No. 10          Stephanie Horne
Job, Title or Attorney    Attorney of record Patrick K. Adkinson
Street Address            1222 S. Paterson Blvd. Ste 400
City and County           Dayton  Montgomery
State and Zip             Ohio  45402
Telephone Number          (937)-496-2600
email:                    padkinson@poling-law.com

Defendant No. 11          Adan Fuentes
Job, Title or Attorney    Attorney of record Patrick K. Adkinson
Street Address            1222 S. Paterson Blvd. Ste 400
City and County           Dayton  Montgomery
State and Zip             Ohio  45402
Telephone Number          (937)-496-2600
email:                    padkinson@poling-law.com

Defendant No. 12          Andrew Lane
Job, Title or Attorney    Attorney of record John Musto
Street Address            335 W Third St, Dayton, OH 45402
City and County           Dayton  Montgomery
State and Zip             Ohio  45402
Telephone Number          (937) 333-2677
email:                    john.musto@cityofdayton.org

Defendant No. 13          Richard Biehl
Job, Title or Attorney    Attorney of record John Musto
Street Address            335 W Third St, Dayton, OH 45402
City and County           Dayton  Montgomery
State and Zip             Ohio  45402
Telephone Number          (937) 333-2677
email:                    john.musto@cityofdayton.org

Defendant No. 14          Joseph Blake
Job, Title or Attorney    Attorney of record John B Welch
Street Address            580 Lincoln Park Blvd., Suite 222
City and County           Dayton  Montgomery
State and Zip             Ohio 45429
Telephone Number          (937)-296-1600
email:                    jwelch@arnoldlaw.net

2

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question            ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
Violations of the 1st, 4th, 5th, 6th, 8th, 13th, 14th, Amendments to the U.S. Constitution. Violations of federal statute 42 U.S.C. § 1983, Intentional Infliction of Emotional Distress Tort law. Medical Battery, Assult and Battery, Rape or Sexual Battery, Additionally Other Violations of Ohio Revised Code(s) Rules of Court, and Due Process among many other things.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

    a.    If the plaintiff is an individual

The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

    b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,

and has its principal place of business in the State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

    a.    If the defendant is an individual

The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

b.   If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.   The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   Where did the events giving rise to your claim(s) occur?

405 W. Grand Ave Dayton Ohio, 45405. 1222 S. Patterson Blvd. Dayton Ohio, 45402

B.   What date and approximate time did the events giving rise to your claim(s) occur?

September 13th, 2017 around 2:13 am through September 14th around 8 pm. January 12th (afternoon) and 19th (afternoon) 2018. Febuary 2nd (afternoon) March 5th 2019 1:02 pm

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

C.   What are the facts underlying your claim(s)? *(For example:  What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*
See the attached document containing fourteen (14) numbered paragraphs detailing Constituitonal violations of law, violation of Federal Law, Violations of State Laws, Violations of Due Process, Violations of Fair and Equal Treatment.

## IV.   Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.
Plaintiff is currently suffering from ptsd, abdominal pain, diarrhea, emotional (spiritual) distress, agitation, anhedonia, constant headache, anxiety, insomnia, somnolence, confusion, erectile dysfunction, social stigma, fear, joint pain, ringing of the ears, sensitivity to light & high pitched noise, and vertigo. Other effects suffered; kidney pain, painful urination, unconsciousness, amnisia, convulsions, anal leakage, changed mental state, loss of compainionship, disorientation. Plaintiff is much more likely to sustain the following conditions as a direct result of defendants actions; renal falure, deep vein thrombosis, hepatic falure, dementia, respiratory failure, agitation, anxiety, and many other brain and health disorders. The damage plaintiff sustained is unmeasurable in dollar amounts, the harm that continues to invade his life on a daily basis will cause him pain and discomfort daily for the rest of his life. Plaintiff's life span has been shortened by the actions of the defendants. The injuries caused by defendants are ongoing, expansive and not likely to subside or be mitigated without Court Order. Plaintiff respectfully request that the defendants be ordered to comply with and respect all of plaintiff's Constitutional Rights and Privileges. The public health and safety would benefit from the granting of this injunction.

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.
Grandview Medical Center be required to pay for further testing, treatments, experts & diagnostics to fully ascertain the damage to plaintiff caused by Defendants and turn over all surveillance videos and logs from 09/13/2017-09/14/2017 & 09/18/2017. That the Plaintiff be awarded compensation in the amount of $20,000.00 for medical cost that continue to accrue, and actual damages. Plaintiff request $33,333,333.00 for pain and suffering that is ongoing. Plaintiff also request punitive damages in the amount of $333,333,333.00 to be shared by all Defendants at the Court's discression. Plaintiff has had to relive the experience of the rape, assault and subjugation of his body and Spirit on a daily basis and it interferes with every aspect of the Plaintiff's life, making the quality of life extremely poor. The real actual damages are hard to determine as such acts of the Defendants are so extreme and outrageous and outside the bounds of resonable thought. This unimaginable act calls for unimaginable accountability. Any other relief that the Court would find just and proper.

Part C Attachment

1. On or about 9/13/17 plaintiff ran out of gas going around a corner and lost control of a motorcycle he was operating near the intersection of Ridge and Riverside in the City of Dayton, Ohio and suffered minor injuries as a result.  Defendant Brian Lewis of the Montgomery County Sheriff's office responded as a Dayton Police Officer and an ensuing lawsuit [Simkins_v_Grandview_et_al 3:18-cv-309] Resulted.

2. In the ambulance presumably on the way to 405 W. Grand Ave Dayton Ohio, 45405 Plaintiff again stated that under no circumstances did he wish to be taken to Grandview Hospital. Defendant Wiley stated that nobody ever wants to go to Grandview, but that they had no choice but to take plaintiff to Grandview because Defendant Lewis was a police officer and they had to do what he said. When Plaintiff arrived at Grandview Hospital around 2:20 a.m. on 9/13/17, he was taken into the ER there, given drugs against his will in efforts to begin to facilitate memory loss, and transported back to the scene of the wreck to make another video by Lewis as Lewis stated at this time that the second video made on scene by Lane and Carpenter was 'Not going to work', Plaintiff was then taken back to the scene and at least two or three videos were made at which time Andrew Lane eventually made the statement to the Plaintiff that if the Plaintiff did not cooperate and stop saying things on the video like "Don't take me to Grandview", "Don't touch me" and "Why did you hit me in the eye?" Then he (Andrew Lane) was going to call Defendant Lewis back to the scene and tell him that the Plaintiff was being uncooperative and then they would toss him in the river (Stillwater River)and leave him to die. This is evidenced by the nurses notes given to Plaintiff by Defendants wherein is stated that Plaintiff "was found ten yards from the motorcycle", and as such the video turned over to the Plaintiff by the DPD contains an altered time stamp, on such video the Plaintiff can

1

be seen only a few feet away from the motorcycle, both Plaintiff and motorcycle are in the

grass. Andrew Lane can be seen on this video committing assault and battery by ordering the

injured Plaintiff to sit, and then touching him via un-tucking his shirt (which was completely

tucked in) without asking permission to do so. Wiley or Wolfe, or an unknown party ask the

Plaintiff to "Take off his jacket" for unknown reasons, demonstrating an attempt to exacerbate

any injury the Plaintiff may have had at the time. The Plaintiff can also be seen on this video

denying that the injury to his eye was caused by the motorcycle wreck and refusing medical

treatment. Lane can be witnessed telling the Plaintiff that he is getting stitches and it "is not

even debatable" demonstrating that Lane has made a determination of the Plaintiff's medical

condition and subsiquent treatment of such condition and is involved in such medical desions

without lawful authority, demonstrating that a plan was already in place to unlawfully act upon

the Plaintiff. These actions violate the IIED tort law and the 4th, 8th, and 14th Amendments to

the United States Constitution in that Defendants Lane, Wiley and Wolfe acted in concert with

Defendant Lewis, Lane and others to conspire to violate plaintiffs U.S. Constitutional Rights,

thereby opening claims under 42 U.S.C § 1983, ORC IIED law and assault and battery tort laws.

This claim is also evidenced by the extra mileage logged in the EMT report as the total mileage

of actual distance of one trip to pick the Plaintiff up and transport him to Grandview would have

been 3.0 miles, but 6.0 miles are logged on the report which allows for the extra miles the

ambulance made driving back and forth leaving the scene and coming back (attached and

identified as "Page 263" located on the bottom right coner of the page). This incident was only

partially covered in the pending litigation of Simkins_v_Grandview_et_al 3:18-cv-309 .

3. Defendant Lewis was still present upon Plaintiff 's arrival back at 405 W. Grand Ave Dayton

Ohio, 45405 such exchanges that occurred during this time-frame are the subject of pending

litigation in Federal District Court see: Simkins_v_Grandveiw et al 3:18-cv-309.

4. About or around 2:35 to 3:00 am on 9/13/2017 Plaintiff arrived back in the ER at Grandveiw and informed all staff present that he did not wish to be treated at their facility and that they needed to release him so that plaintiff could receive treatment at a hospital of his choosing. Plaintiff also explained that he was a firm believer in God and that the Lord of all things would care for him and protect him as he was already praying for himself and had faith that the Lord would preserve him. Plaintiff then stated to Dr. Paul Levy that he did not wish to be treated by anyone at their hospital or be given any drugs at their hospital due to his religious beliefs. Dr. Paul Levy stated loudly that they could not treat plaintiff due to this statement. Nicole Van Horne stayed with the Plaintiff and Paul Levy DO and Christopher McIntosh DO walked away from plaintiff and had a conversation with Brain Lewis, during this time Nicole Van Horne administered an oxygen tube to the Plaintiff, minutes later McIntosh returned and stated to Plaintiff that a lot of people needed to get paid for their time on this and business was slow tonight so he was going to "pink slip" Plaintiff, meaning that he would initiate in involuntary civil commitment (it is presumed that Brian Lewis instructed McIntosh to issue the pink slip, as all staff did exactly as Brian Lewis instructed when he instructed it at all times, but they were out of earshot of the Plaintiff at this time). At this time Lewis instructed McIntosh to remove the oxygen tube and McIntosh also stated that oxygen was expensive and for paying customers only, and removed the oxygen being administered to the  Plaintiff. Plaintiff became slightly perturbed at McIntosh for this act and stated that he did not agree with such actions and as such would not be paying for any treatments at Grandview and stated that he had a freedom of choice of where to spend his dollars for services. McIntosh got visibly upset at this and said that he (McIntosh) was going to get paid one way or the other and that Plaintiff "looked broke

3

anyway" to which the Plaintiff replied that he always pays his bills, but would not be giving Grandview a dime if they forced any treatments on him, being that Plaintiff knew McIntosh was up to no good and informed everyone present that he was likely to sue everyone involved in such blatant disregard of his wishes, health, religious beliefs and rights guaranteed under the U.S Constitution. Plaintiff further informed McIntosh that plaintiff was an ordained minister and entitled to exercise his religious rights to refuse medical treatment. McIntosh began reading Plaintiff his rights, to which plaintiff expressly stated that he wanted an attorney and to be presented immediately with a copy of any and all paperwork. Defendant Lewis stated at this time that the Plaintiff would pay for making that statement later, telling the Plaintiff that someone else that was present and had also witnessed the assault Plaintiff had committed upon a fellow officer and knew what a "piece of shit" the Plaintiff was, and was coming up to tell the doctors what had really happened, and then walked away out of the Plaintiff's sight at this time. McIntosh failed to present Plaintiff with a copy of any paperwork as requested. Plaintiff also stated that he wanted someone to call his insurance agent, a family friend, in order to report the accident and arrange bail if necessary. Plaintiff was specifically denied the ability to contact his insurance agent, by McIntosh. Plaintiff again stated that he did not want any treatments or drugs(evidenced by attached page identified as "Page 269" in the bottom right corner of page). McIntosh then replied in a hushed tone that unless the Plaintiff had a family attorney that was already on Plaintiff's family's payroll that he could call right then and there that there was nothing that would be done to protect Plaintiff's rights. Plaintiff stated that he wanted an attorney appointed to him and that he qualified for such an appointment. McIntosh then stated that Plaintiff was poor and that this was the only sin anyone cared about these days. McIntosh further stated that he could do whatever he liked to Plaintiff and that regardless

4

of what McIntosh did to plaintiff, all McIntosh needed to do in order to receive immunity was to say he felt his actions were in Plaintiff's best interests. Plaintiff replied "That sounds like total bullshit to me and you had better go get a warrant before you do anything because I know my Rights". These actions violate the IIED tort law and the 4th, 8th, and 14th Amendments to the United States Constitution in that Defendant McIntosh acted in concert with Defendant Lewis to conspire to violate plaintiffs U.S. Constitutional Rights, thereby making relief under 42 U.S.C § 1983 appropriate and substantiates claims against him for medical battery and assault.

5. During the same time as paragraph 4 there begins a verbal exchange between the Plaintiff and Defendant McIntosh at Grandview wherein McIntosh exhibits a strong desire towards demonstrating a one-upsmanship on the Plaintiff of legal knowledge, argot knowledge, general knowledge, and specifically tells on himself in great detail with confidence in the drug cocktail he is planning on administering to the Plaintiff in efforts to completely wiping out Plaintiff's memory as evidenced in the following; as McIntosh also went on to make several other statements in regards to such things as the Ohio Supreme Court Chief Justice O'Conner being in the pocket of Brian Lewis's family and that Justice O'Conner had recently publicly claimed that she "Had his back because he was a medical professional" and that he (McIntosh) could do whatever he liked due to this connection and that the Plaintiff had better show him some respect because he could make things very hard on him (Plaintiff). Plaintiff again stated that no matter what McIntosh said or did, Plaintiff would pursue a lawsuit against him and that Plaintiff had full knowledge of his Constitutional Rights. Plaintiff again stated that he did not want any drugs or any treatments because he was an American Citizen and he had the right to choose his own medical care, if any. McIntosh then stated that Plaintiff was displaying "hubris" and they would be teaching the plaintiff a lesson about "hubris" by means of "the act of hubris", [This

5

indicates that the sexual battery preformed upon the Plaintiff was pre-meditated and McIntosh

had full knowledge of that such occurrence was imminent when he issued the "pink slip"].

McIntosh admitted that no matter what was done or said it is illegal to touch someone who has

told you that they do not want touched. Plaintiff immediately stated that he did not want

touched, again stated that McIntosh needed a warrant to act on him and Nicole Van Horne DO

interjected at this time and asked why McIntosh would be telling plaintiff all of these things.

McIntosh stated to Van Horne that plaintiff was not going to be able to remember any of this

anyway (due to the eminent drug cocktail combined with the head injury of the Plaintiff and

lack of oxygen to the Plaintiff's brain ), that he was satisfied that he had fully informed plaintiff

of his rights, and that plaintiff would not be availing himself of his rights. McIntosh then again

stated that plaintiff displayed hubris, that McIntosh could not believe plaintiff had spoken to

Lewis in the manner that he had, and that plaintiff would be taught a lesson about who to

respect in society, who was important, and who was not. Around this time invasive treatments

were began upon the plaintiff. Plaintiff steadily requested that they cease and desist the

treatments. Defendants McIntosh as well as Van Horne and David Jenkins, and a Shelby

Richardson (or a "Jane Doe") was present at this time and heard the plaintiff's statements and

then all of these persons administered unwanted touching via "treatments" or "diagnostics" to

him in disregard of Plaintiff´s protests and the intense physical pain they were causing him,

these Defendants are in plain violation of the 1st, 4th, 5th, 6th, 8th, 13th, and 14th

Amendments to the U.S. constitution as well as violations of several criminal statures. This

makes McIntosh subject to a 42 U.S.C. § 1983 claim, IIED claims, medical battery claims and

claims of conspiracy to sexually assault and medically batter the Plaintiff. Also provides that

Shelby Richardson (or Jane Doe) is witness.

6

6. The bulk of the following acts occur between about 3 am and 5 am on 9/13/2017 at 405 W.

Grand Ave. Dayton Ohio, 45405; Plaintiff was taken to a CT Scan room where Plaintiff was

assaulted and battered by way of drug injections of an unknown blue contrast dye and a yellow

contrast dye, both of which the Plaintiff specifically stated that he did not want under any

circumstances. Shannon Ravine is described in the records provided by Defendants as

prescribing and/or administering such drugs specifically iodixanol (VISIPAQUE) in conjunction

with McIntosh (see at the bottom right of attached page "Page 71" and "Page 269"), and note

there is no record of the blue drug being administered. This is clearly a medical battery

perpetrated with full intent by Shannon Ravine as she had full knowlege that Plaintiff did not

want such drugs, or should have had full knowledge. Christopher McIntosh participated in the

order for such drugs and scans. Also noted on the same page additional x-ray scans ordered by

Jenkins. McIntosh was "Teaching" Jenkins, so all acts performed by David Jenkins were directly

supervised by McIntosh, at least 41 such scans were preformed under the ultimate Supervision

of McIntosh, Grandview Medical Center (Grandview Hospital) Kettering Adventist Healthcare

(Kettering Health Network) EmCare and possibly other corporations and all such corporations

are responsible in a respondeat superior liability as McIntosh operated in his actions under the

authority of such corporations and under direct care or control of these corporations and as the

primary charge or actor of these corporations.

7. Plaintiff's recall continues, as stated in Simkins_v_Grandview_et_al 3:18-cv-309, Plaintiff has

had memory loss. As this memory continues to return, there will be further aphorisms of the

truth proclaimed. Sometime between 3 and 6 am at Grandview located at 405 W. Grand Ave in

Dayton, Ohio, 45405 Plaintiff was returned to the ER portion of the Hospital wherein Joshua

Spears, dressed in his Dayton Police uniform and acting under color of state law makes an

7

appearance and punches Plaintiff several times in his jaw, swelling his jaw and causing the need

for dental work. Joshua Spears furthers Brian Lewis' claims, stating that Plaintiff is "a piece of

shit" and "assaulted his brother on the DPD" and "Got away with with assault on a police

officer, and robbing an old man, but now was going to pay". Joshua Spears calls John Griffin on

the phone during this time frame and invites him to "come up to Grandview and join in the fun

with the Plaintiff" Griffin declines and Spears offers to "Punch him once for you" to which from

the look on Spears' face it is likely that Griffin declines such invitation. Spears also Mentions to

Griffin that his "Ugly sister-in-law" is home watching the kids, which could indicate that Megan

Spears could be at the Grandview Location, and possibly involved or is witness to such acts of

tort. Spears has on dark sunglasses, however due to pictures found of Spears online and a video

and voice recording of Spears that the Plaintiff  obtained from attorney Dennis Lieberman,

Plaintiff can positively ID Joshua Spears as being there and assaulting the Plaintiff on this day

and time, as Spears has a very unique gum-line, teeth, lips, voice, and the shape of his skull is

decidedly different than the man who was claiming to be Brian Lewis. Some of Spears particular

assaults were recorded and evidenced by the attached nurses notes (attached and identified at

the bottom right of the page as "Page 269") wherein the Plaintiff has a shift of pain level noted

from a level of zero (0) increased to a level of ten (10) with the only notation being Dayton PD

at bedside, wherein Plaintiff is finially noted as requesting a lawyer, and the Dayton Police

officer responds saying a court date will be mailed to the Plaintiff at the address he provided,

this is also evidence that such expectation that the Plaintiff would be unable to make a court

appearance upon the date listed on the ticket, giving over to an expectation that the Plaintiff

would be incapacitated by the pre-planned drug cocktail administered at the conclusion of said

torture, and demonstrates knowledge of Spears that Plaintiff would be drugged after such

8

assaults and Spears direction of said drug assault.(It is specifically noted by the attached statement turned over to the Plaintiff by John Musto, City of Dayton attorney, that Mathew Carpenter did not have any interaction stated within his statement, as the statement is a blank page with only Mathew Carpenter's name at the top). Joshua Spears punches Plaintiff several times in this time-frame, mostly all in the right lower jaw while Plaintiff is in restraints and unable to defend himself, Spears does this without any possibility of the Plaintiff harming him and without provocation. It is presumed that Spears is acting under Lewis' authority, or Spears has the same unlawful authority predicated by mafia influence and that Lewis was training Spears on how to be an effective usurper and unlawful ruler by force, fear and intimidation. As statements turned over by John Musto also indicate that Defendant Lane claims they only spent a few minutes with the Plaintff. The sexual assault was preformed upon the Plaintiff during this time-frame and Spears was present during such sexual battery that occurred, and also laughed at the Plaintiff while such rape was occurring, joined in making fun of Plaintiff during this time, stating several slurs such as fag, homo, bitch, and also threatened the Plaintiff with more violence at this time. At one point, Geoffrey Hahm, who was involved in the the administration of such colonoscopy, stated to Joshua Spears to back off, and one of the nurses present told him that was Rebecca Lewis' nephew, and Halm replied that he did not care who's nephew it was that he needed to stop and then told the Plaintiff to remember his name (Halm's) and he would testify to the truth, because Halm stated that he would not be party to such actions. Joshua Spears continued to threaten the Plaintiff and interfere in such procedures and Halm left the room and declared to the Plaintiff to remember his name. This was incredibly traumatizing on the Plaintiff, perhaps the single most traumatizing moment of that night. Therefor, it is the determination of the Plaintiff that Joshua Spears knew of and directed the intended drug

9

cocktail (with Brian Lewis), and participated in repeated punching of the Plaintiff, the rape of

the Plaintiff, with a supposition that Plaintiff would not recall the incident, and in conspiracy

with other Defendants named in Simkins_v_Grandview_et_al 3:18-cv-309, as well as some of

the Defendants named in this Complaint and Request for Injunction, and is liable to the Plaintiff

under assault and battery, IIED, and Violations of 42 U.S.C § 1983 for willful torts. Cheif Richard

Beihl Recieved an offical complaint of these action(s) through his attorney John Musto on

March 5th 2019 and refused to act upon such complaint and encouraged and approved Joshua

Spears to continue to harrass the Plaintiff though unfounded complaints and an unfounded

request for a Civil Stalking Protection Order through the Greene County Court of Common Pleas

in direct violation of 42 U.S.C § 1983 causing additonal IIED.

8. During the time-frame between 3 and 6 am at Grandview Located at 405 W. Grand Ave

Dayton Ohio 45405 on 9/13/2017 Plaintiff is placed in restraints closer to (3 am) also forcibly

drugged (closer to 6 am) at the Direction of McIntosh and both incidents occur with the

participation of Loredel E Corneja, who directly injected some of the Drugs with full knowledge

that Plaintiff did not want the drugs and that there had been no Court Order issued authorizing

such drugs. Drugs administered include but are not limited to; Ancef (26m), Haldol (10mg),

Benadryl (50mg), Fentanyl (50mcg), Ativan (1mg), Ketamine (250mg) and Versed (4mg).

Present during the time frame and incident of forced drugging, McIntosh, states to other

individuals participating in the forced drugging who are David Jenkins, Shawn Louis Marein, and

Nicole Van Horne, that McIntosh is going to teach them how to do a "double "B52" drug bomb

and get away with it". This is a code word assigned to the specific cocktail administered with

intent to "bomb" the brain of an individual to the point of severe and lasting cognitive defects

wiping out memory function for an interminable amount of time. Drugs administered were

contraindicated to head injury and contraindicated to each other, making this drug cocktail

intentionally harmful, with the possibility of causing death, and in furtherance of IIED, assault,

battery and presumably 42 U.S.C. § 1983 claims as it is plausible that this is done under

continued direction of Brian Lewis. Further noting that McIntosh is "Teaching" Jenkins and

responsible for the drugs Jenkins is prescribing as well. To be clear McIntosh was responsible for

ordering most of the Drugs, Jenkins was there and administered the Drugs, and Marien sought

to claim to be Jenkins in an attempt to create confusion of who was the ultimate responsible

guilty party, making all three of these individuals guilty of IIED, and battery, and plausibly

McIntosh and Marien were further acting under direction of Brian Lewis and Joshua Spears

given Mariens statements, and guilty of violations of 42 U.S.C § 1983.

9. Plaintiff awoke a few hours later on 9/13/17 at 405 W. Grand Ave Dayton Ohio, 45405 and

heard defendants discussing the antibiotic resistant bacteria known as MRSA. Plaintiff was very

cold and realized he had no blanket and was wearing no clothes. Plaintiff noticed his clothes in a

bag on a chair by the wall. Plaintiff attempted to get up and put his clothes on. At this time

Stephanie Horne came into the room and grabbed plaintiff's arm and told him to trust her, that

Plaintiff was now safe, and that Plaintiff needed to get back into bed quickly. Plaintiff told

Stephanie Horne to get him a gown and he would get back into bed. Several more persons

came rushing into the room yelling and flailing their arms about. Stephanie Horne told

Defendant Van Horne to get Plaintiff a gown. Van Horne left and returned with a gown. Plaintiff

had taken his phone out from his belongings and as soon as he had his phone in hand, all

Defendants and persons present quickly fled the room. Plaintiff noticed at this time that he felt

much worse than when he had first arrived at Grandview Hospital and much worse than before

he had been given drugs. Notably, plaintiff's head was spinning much worse than when he had

11

arrived at the hospital and generally he felt that he was in a much worse condition than the condition that Plaintiff was in pre-"B52". Plaintiff's eye was now swollen completely shut and was in a much worse condition than is shown on the police video. Plaintiff had a much worse headache, that persist to the day and time of filing this Complaint, and generally felt much worse than before he was given drugs. Plaintiff lay down on his left side and attempted to go back to sleep. At this time defendant McIntosh came into the room and started screaming that plaintiff could now leave if he wanted. McIntosh also told plaintiff that he had an air bubble in his head and then repeated several times that plaintiff was welcome to go and McIntosh couldn't stop him. He was saying this very loudly, which plaintiff found to be very painful due to the sensitivity of his hearing. Plaintiff stated that he felt horrible and ask if he could stay for a bit longer and be left alone. McIntosh again screamed that plaintiff could leave. Plaintiff then picked up his phone to text a friend to get a ride. McIntosh yelled at plaintiff not to take his picture and hurried out of the room. Plaintiff decided to wait and pray to the Lord on this issue and hopefully feel a little better before plaintiff attempted to get out of bed again. Plaintiff then fell back asleep. Stephanie Horne commits a medical battery by touching the Plaintiff as she was present and likely saved his life earlier in the night, see pleadings of Simkins_v_Grandview_et_al 3:18-cv-309, however Stephanie Horne had full knowledge and did hear the Plaintiff state several times that he did not want touched by anyone.

10. Presumably, from the attached record in evidence, sometime around 2:34 pm on 9/14/2019 Andrew Brochu and Adan Fuentes collaborated on a battery and assault, via unwanted, unauthorized, invasive, and false diagnostics with intentional fraud in furtherance of committing IIED, these two Defendants claim to the Plaintiff that he has an infection in his head that may get into his brain due to the open skull fractures and also tell him that he has no pain moving his

eyes, and that he has 'normal vision' in both eyes, and also tell him that he is not concussed and

that if anyone tells him he is concussed do not believe them because they are lying to him, this

is in spite of the fact that Plaintiff actually has an open skull fracture, several closed skull

fractures an orbital tear and blood filling his right eye, with his right eye swollen shut barring

any ability to look out of it, let alone be able to self determine if said vision of eye was blurry.

This is medical battery, assault, knowing fraud and deliberate indifference to Plaintiffs well

being furthering an IIED claim, and these actions were plausibly done under orders from Brain

Lewis, as Adan Fuentes has been promoted to Department Head at Grandview Medical Center

since this occurrence, and Both Defendants did these things willingly, offering obvious false

diagnosis with specific intent to cause IIED and confuse the Plaintiff as to the extent of his head

injury and whom he could trust acting under the direction of Brian Lewis subjects these

Defendants to action under 42 U.S.C § 1983, as the bulk of their conduct is in furtherance of

IIED.

11. As these other individuals did not prescribe any drugs (to the Plaintiff's current knowledge,

it will be presumed that they were acting in fear of Brian Lewis and the Lewis Mafia and/or

possibly had no knowledge of harmful intent, therefor are listed as witnesses as they did either

view the x-rays and offer opinions of such or touch the plaintiff without his consent, in the

Plaintiff's opinion the totality of their actions to not rise to the level of tortious conduct

expressly and clearly at this time. These individuals are listed in no particular order; L. Kathryn

Campbell, Erich Muchala, Paul Levy,  Liz Connel (who had previously met the Plaintiff at

Belmont Park) Geofrey Hahm (who actually did participate in the colonoscopy but was duped by

Brian Lewis into acting and did immediately offer an apology for his part, and when someone

promptly acknowlages a wrong and ask for forgiveness it is the policy of the Plaintiff to extent

13

such forgiveness promptly) Lindsey Elliot, Jamie Peters, Nicole Marie Farrow (commits obvious medical malpractice but stature of limitations is up for that) Amy Alexander (witness only, did not commit any crime or act in tortious mannor) Nancy Henne, Mike McPheron or Michal Pillion is listed as performing some type of x-ray, but Plaintiff cannot remember having this particular x-ray, or which one performed it, so no claim on either of these other than a witness. Michael Stafford is a witness at both Grandview and Victor J. Cassano Center. A nurse, known only to the Plaintiff as Tagen claimed that she would testify and tell the truth if Plaintiff remembered what had happened and followed Stephanie Horne's instructions. Plaintiff does not know if he lived up to such requirements, as Plaintiff again encountered a nurse Tagen who was this same person at another time during a separate appointment, and she did not come forward to the Plaintiff at this time. Plaintiff has encountered Tagen at least two other times, but she has not come forward to him and seeing her traumatized the Plaintiff and he was not able to speak directly to her, out of the shame and fear of possible disappointment. However it is the the actions of the Plaintiff to continue to seek out this mystery nurse with a very ironic name of Tagen and hopefully secure her testimony at trial.

12. On 9/14/2017 between 2 and 6 pm Shawn Louis Marien interviews the Plaintiff and at this time and states repeatedly that he is David Jenkins and that he does not care about the Plaintiff or anything the plaintiff says and that if the Plaintiff does not keep his mouth shut about the incident that the Plaintiff will be murdered by the Lewis family and that Marien is going to be getting a nice payday for his efforts and that since the Plaintiff is such a "fat disgusting peice of shit" he wont even feel bad if he gets killed because they should have killed him and helped out some decent people with the Plaintiff's organs and also stated that he (Marien) knew that the Plaintiff was a "selfish piece of shit" because he was not an organ doner. These actions illustrate

IIED by Shawn Louis Marien. Plaintiff was interviewed by several of the defendants as would be evidenced by the medical record. During this time frame David Jenkins did not interview with the Plaintiff. This was done in an effort to confuse the Plaintiff, Marien was the only person who interviewed with the Plaintiff without a mask and hairnet on, and he also claimed to be David Jenkins when he removed Plaintiff's stitches at the Cassano Center the following week, stating several times that "He is my patient" in efforts to trick the Plaintiff. Shawn Louis Marien also participated after the forced drugging done by McIntosh and Jenkins by way of telling also telling the Plaintiff that he should kill himself and went on a bizarre tirade about how he and Nicole Van Horne were going to be the next "power couple" in the local healthcare industry as a reward for what they had helped to do to the Plaintiff, and how the Plaintiff was a nobody and Brian Lewis was the most powerful individual around and that Plaintiff was lucky they they did not kill him. Also stating that they would have killed the Plaintiff if it were up to Marien. Plaintiff has had one interaction with Shawn Louis Marien since that time, at 3103 E Stroop Rd Kettering, Oh 45440, where Plaintiff went to make contact with Van Horne and attempted to question her in regards to this incident. Shawn Louis Marien came outside, refused to give his name and threatened to "Reach out to his friends in the Department" at which time Plaintiff left the residence as he took this as an invitation to leave.  Plaintiff has also seen David Jenkins at Grandview (as Plaintiff had a legitimate reason to be at Grandview) since this incident and noticed that David Jenkins is shorter than Marien, and has darker and graying hair. Plaintiff also found a picture of Marien on the Kettering Health Network Website and possitivley has identified whom Marien is and his involvement during the time-frames as stated.  Marien continued such intentionally emotionally harmful statements for about fifteen to twenty minutes during the aforementioned interview. The Plaintiff can recall that Marien repeatedly

15

stated that the Lewis family owes him a big favor for what he is doing to the Plaintiff and they

will protect him from the Plaintiff and that Marien trust the Lewis family over any threat to sue

made by the Plaintiff, and further suggested to the Plaintiff that he just kill himself, because

"no one will believe him over so many doctors" and repeatedly calls the Plaintiff a "piece of

shit". Further it was the specific intent of Shawn Louis Marien to cause the Plaintiff IIED and

excessive trauma at this time to further facilitate the memory loss, as such statements were

made with an express purpose to harm the Plaintiff and make him want to forget the incident.

In light of statements made by Marien, and Marien's actions demonstrate a knowing conspiracy

with Brian Lewis and Joshua Spears and is in violation of the 1st, 8th and 14th Amendments to

the U.S Constitution, actionable under 42 U.S.C. § 1983, IIED, and also medical battery, verbal

assault with knowing fraud perpetrated in furtherance of these torts.

13. On 9/14/2017 between 3 and 8 pm Stephanie Horne enters and talks to the Plaintiff as last

of all persons who do a "release interview" Stephanie Horne talks to the Plaintiff for a very long

time, possibly many hours, as the Plaintiff was so tired from getting no rest for the previous 36

hours and due to all of the drugs Plaintiff forced upon the Plaintiff, the Plaintiff fell asleep many

times during such conversations and woke up with Stephanie Horne talking stating instructions

offered in the form of advice and since the Defendant spoke so cordially, the Plaintiff ceased to

be critical of her and her advice. Much of the advice centered around the issuance, in Plaintiff's

pre-drugged state, of binding verbal contract(s), which issued repeatedly, expressly stated

several times, and reiterated directly before the assault via drugging that everyone present

would be sued, and also issued statements of fact concerning serious lawful penalties for

perjuries and violations of moral codes concerning the unauthorized dosing of drugs unto

Plaintiff's being. At this time settlement of this matter was offered by Defendant Horne, and

rejected by the Plaintiff. Also at this time Plaintiff's actual physical condition and presence of ailments were further convoluted to him, With Defendant Horne stating that she disagreed with the medical diagnosis that he did not sustain a mild traumatic brain injury, as his head injury itself was substantive of such diagnosis. During this time Plaintiff also noticed that his cognitive state was beginning to worsen, as he could not remember things that were said to him just a few moments before, and thus began a horrible state of being for the Plaintiff, where Plaintiff's cognition continued to worsen. Stephanie Horne doses the Plaintiff with unknown drugs at this time to facilitate further memory loss and states repeatedly to Plaintiff to come and ask her or Dr. Van Horne for help if he does remember, and further states that if the Plaintiff does tell on Joshua Spears and Brian Lewis things will not go well for him as both of these individuals are related to the most powerful family in the area. Plaintiff dismisses this warning as Plaintiff had already determined that it was his duty to fight this malfeasance to the best of his ability. Stephanie Horne giving the Plaintiff drugs is clearly medical battery, however it is still not clear to the Plaintiff of Horne's actual intent. However, the last thing that she did say to the Plaintiff when she opened the door of his room was very loudly "And after you have done all that blow your fucking head off you worthless piece of shit" which is in contradiction to most of the conversation as she talked very calmly and soothingly to the Plaintiff. It is the belief of the Plaintiff that Stephanie Horne was under the impression that she had hypnotized the Plaintiff, or at least wanted the other doctors to believe she had, and since she had talked so sweetly to the Plaintiff, he let her and the other doctors believe that he was in a suggestible state, however, it is still the firm belief of the Plaintiff that he is not "normally constituted" and the Plaintiff's life experience has built him into a much stronger being that these Defendants were expecting to have to deal with as it is well known public knowledge that these types of incidents

17

occur often at Grandview Medical Center (Grandview Hospital 405. W. Grand Ave Dayton, Ohio 45405). As these actions of Stephanie Horne clearly demonstrate a willing commission of medical battery, IIED, and she may have been acting under the directions of Brian Lewis and Joshua Spears and possibly other actors of the Lewis Mafia, while it is noted she did act in opposition to Brian Lewis and/or Joshua Spears assaulting the Plaintiff at more than one point (noting that harsh physical assaults made up the "bulk" of Plaintiff's "medical treatments") at another point during these assaults Horne discussed during this time-frame was that she was upset at the Plaintiff for continuing to "own" the conversations in spite of the assaults, and her interventions, as two years later the Plaintiff is finally starting to feel more like himself again, and can begin to understand how a normal person, normally constituted would have submitted to such terrorist demands under similar conditions. However, Plaintiff's first and best quality are his honest words and he will not be silenced or subjugated by brute force as the very root of brute is evil, and the Plaintiff is rooted in good. The fact that the bulk of the aforementioned Defendants sought to take the Plaintiff's words from him permanently is especially heinous to the Plaintiff. Horne does offer a warning during this time that Joshua Spears was being groomed to be the Lewis mafias next public figurehead and that the Plaintiff would be in great danger if he spoke out against Spears, as this warning was likely steeped in truth, more than the Plaintiff knew, due to recent occurrences by state actors. Therefore a 42 U.S.C § 1983 claim is made against Defendant Horne as it is the Courts determination to infer her intentions from the true facts of the Plaintiff claims.

14. Plaintiff went to visit Defendant Stephanie Horne in her office at Patterson Rd. Dayton Ohio on January 12, 2018, and again on February 2, 2018, submitting to a requested CT scan during the intermittent period (January 19th 2018). Presumably the CT scan was to check the Plaintiff's

brain for further bleeding and damages. Defendant Stephanie Horne engaged Kettering Health Network to preform this scan against the stated wishes of this Plaintiff. Plaintiff acted in such manner to engage Defendant Horne to hopefully get some information relating to the extreme cognitive dysfunctions of the Plaintiff, telling her he had been repeatedly diagnosed with a sinus infection, but he was rather certain that he had no type of infections within his body and physically, besides the lingering pain from the assault, and major emotional trauma from the rapes, batteries and assaults committed at Grandview acting in synergism to exasperate an overwhelming cognitive dysfunction caused by the overdosing the Plaintiff with drugs, Plaintiff felt as tho his physical condition could continue to mend. Also, at this time, Plaintiff could vaguely recall that Defendant Horne had promised to help him if he remembered to ask her for help, and that was the driving reason behind Plaintiff for his visit to Defendant Horne, he had come to her in a meager and humble fashion, and begged for help. Defendant Horne was very cordial to him during the January visit, telling him he had sustained a mild traumatic brain injury and a concussion as well. This was also in fulfilling her request made at Grandview on 9/14/2017 in that she wished for the Plaintiff to engage her for her own reasons, which Plaintiff believes. In retrospect, Plaintiff's health and well being were disregarded by Defendant Horne at this time by way of suggesting to the Plaintiff that he have a CT scan, dosing him with harmful radiation, to view his brain, and then failing to even discuss the scans that were taken with him. The most concerning part of this interaction is the fact that Joseph Blake was engaged to view the Plaintiff's scans, as Horne had been specifically instructed not to engage the Kettering Health Network for any reason, and the Kettering Health Network was in receipt of a valid written no contact order, therefor Blake was in violation of such no contact order, Horne knowingly facilitated the violation of such no contact order, and as such Blake is guilty of

19

knowingly violating such no contact order, and such action is a medical battery, and Horne is guilty of conspiracy on both accounts. Defendant Horne was the first Doctor that Plaintiff had encountered since the Grandview incident that stated to him that he was suffering from a mild traumatic brain injury and concussion, which was a correct diagnosis of his present condition, that did lead Plaintiff to begin to recall the facts of occurrence more clearly, and as such Horne has mitigated her own behavior to a degree, but not to the extent to be entirely clear of liability to the Plaintiff, as she may have very well saved the Plaintiff's life, but for what. It would appear upon the surface, that the true intent of Stephanie Horne's desire for the Plaintiff to come see her was little more than to ascertain how much the Plaintiff had recalled of the Grandview incident, report back to her Lewis mafia superiors, and further inflict IIED upon the Plaintiff and traumatize him. Nicole Van Horne was at Stephanie Horne's office on January 12 and attempted to hug the Plaintiff and apologize for what was done to him, this furthered the trauma and IIED upon the Plaintiff at this time. Plaintiff refused to hug her at this time and told her that she can apologize by telling the truth in a court of law.

Find attached six(6) pages of evidence (partially redacted) "Page 5" and "Page 6" note McIntosh was responsible for the drugs administered by Jenkins/Corneja. Find one page of several questions to be returned as answered with said Answers to this Complaint and Request for Injuction.

20

**Questions to be answered by Mcintosh and Corneja in their Answers to this Complaint.**

1. Have you ever suggested that Police go "off record" or that something should not be offically recorded when Police are involved?

2. What exactly was your role in drugging Mr. Simkins on 9/13/2017?

3. What was your lawful authority involving the drugging of Mr. Simkins on 9/13/2017 and why did you not obtain a ruling from a lawful court before touching or drugging Mr. Simkins?

4. What was the expected outcome of the combinations of drugs forced into Mr. Simkins?

5. Where the drugs given to Mr. Simkins necessary to save his life?

6. Why was there no anesthesiologist or pharmacologist consulted before such a vast combination of drugs was administered to Mr. Simkins?

7. What was the expected outcome of such drugs in combonation to such a significant head injury?

8. What exactly was the psychiatric care that was needed for Mr. Simkins that was stated as reason to hospitalize him and what type of psychiatric care was conducted in such emergency setting as was stated as such needed emergency?

9. Where FDA guidlines followed for the adminstration of all drugs to Mr. Simkins?

1

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:            08/01/2019

Signature of Plaintiff

Printed Name of Plaintiff      Richard Lee Simkins III

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address