UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

RICHARD LEE SIMPKINS, III,

      Plaintiff,                        Case No. 3:19-cv-227

vs.

GRANDVIEW HOSPITAL, *et al.*,         District Judge Walter H. Rice
                                     Magistrate Judge Michael J. Newman
      Defendants.

_____

**REPORT AND RECOMMENDATION[1] THAT: (1) THE MOTIONS TO DISMISS FILED BY PLAINTIFF AND BY DEFENDANTS DAYTON OSTEOPATHIC HOSPITAL (D/B/A GRANDVIEW HOSPITAL), KETTERING ADVENTIST HEALTHCARE (D/B/A KETTERING HEALTH NETWORK), CORNEJA, VAN HORNE, JENKINS, MARIEN, AND REVINE (DOCS. 21, 28) BE GRANTED IN PART AND DENIED IN PART; (2) THE MOTIONS TO DISMISS FILED BY DEFENDANTS GRANDVIEW FOUNDATION, BROCHU, AND BRIENZA BE GRANTED (DOCS. 21, 24); (3) THE MOTION FOR JUDGMENT ON THE PLEADINGS FILED BY DEFENDANT JANSSEN PHARAMCEUTICALS, INC. BE GRANTED (DOC. 70); AND (4) THE MOTION TO DISMISS FILED BY DEFENDANTS HORNE AND FUENTES BE GRANTED IN PART AND DENIED IN PART (AND THE MOTION FOR SUMMARY JUDGMENT, IN THE ALTERANTIVE, BE DENIED WITHOUT PREJUDICE) (DOC. 78)**
**\*\*\***
**ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR ADDITIONAL TIME TO CONDUCT DISCOVERY (DOC. 83)**

_____

      This civil case is before the Court on the amended complaint filed by *pro se* Plaintiff Richard Lee Simpkins, III against twenty Defendants. Doc. 9. The named Defendants are as follows: (1) Dayton Osteopathic Hospital; (2) EmCare; (3) Grandview Foundation; (4) Kettering Adventist Healthcare; (5) Janssen Pharmaceuticals, Inc.; (6) Joseph Blake; (7) Nicolas Brienza; (8) Loredel Corneja; (9) Adan Fuentes, M.D.; (10) Stephanie Horne, M.D.; (11) David Jenkins, D.O.; (12) Andrew Lane; (13) Brian Lewis; (14) Shawn Marien, D.O.; (15) Christopher McIntosh, D.O;

_____

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

(16) Shannon Revine; (17) Joshua Spears; (18) Nicole Van Horne, D.O.; (19) Joseph Wiley; and (20) Craig Wolfe. *See id.* at PageID 116-20. Simkins's amended complaint asserts civil rights and conspiracy claims under 42 U.S.C. § 1983 and/or § 1985 and the following claims presumably arising under state law: assault, battery, rape, intentional infliction of emotional distress, and products liability. Doc. 9. Defendants Kettering Health Network[2] and Grandview Hospital,[3] in turn, have pled the following counterclaims against Simkins: defamation and tortious interference with a business relationship. Doc. 20 at PageID 201-08.

Now pending before the Court are a number of motions. Initially, there are several motions to dismiss and/or for judgment on the pleadings directed to the amended complaint filed by Defendants (docs. 21, 24, 70) as well as Simkins's memoranda in opposition (docs. 30, 52, 53, 76) and Defendants' replies (docs. 45, 75, 79). Additionally, there is a motion to dismiss the counterclaims of Defendants Dayton Osteopathic Hospital and Kettering Adventist Hospital filed by Simkins (doc. 28) and Defendants' opposition memorandum (doc. 51). Finally, there is a motion to dismiss or, in the alternative, for summary judgment filed by Defendants Horne and Fuentes (doc. 78) as well as Simkins's opposition memorandum (doc. 83) and Defendants' reply (doc. 89). The undersigned has carefully considered the aforementioned motions -- all of which have been fully briefed and are ripe for decision.

## I.

Accepting his claims pled in the amended complaint as true and liberally construing them in his favor, as the Court is required to do in this instance, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Simkins alleges as follows: on September 13, 2017, Defendant Lewis, a Dayton Police

---

[2] Kettering Adventist Healthcare conducts business as Kettering Health Network and is referred to as such hereinafter. *See* doc. 20.

[3] Dayton Osteopathic Hospital conducts business as Grandview Hospital and is referred to as such hereinafter. *See id.*

Officer (or, perhaps, Defendant Brienza claiming to be Lewis) responded to a report of a motorcycle in the roadway.[4]  Doc. 9 at PageID 125.  Upon Officer Lewis's arrival, Simkins requested an attorney, at which time Lewis allegedly beat him with the butt of his pistol until Simkins was unconscious.  *Id.*  Lewis then allegedly "roused [Simkins] by flicking his eye."  *Id.* at PageID 126.

Thereafter, Defendants Joseph Wiley and Craig Wolfe arrived at the scene in an ambulance.  *Id.*  Wiley and Wolfe, at Lewis's instruction, purportedly dragged Simkins to the edge of a bridge and threatened to throw him into the river.   *Id.*  After Wiley and Wolfe put Simkins in the ambulance, Lewis instructed them to take Simkins to Grandview Hospital, at which time Lewis allegedly put a gun to the back of Plaintiff's head and threatened to kill him.  *Id.*

The ambulance took Simkins to Grandview for medical treatment despite his objection to being taken there.  *Id.* at PageID 127.  When he arrived at Grandview, Simkins alleges he was given Ativan[5] in an effort to "facilitate memory loss."  *Id.*  Simkins asserts that, shortly thereafter, Lewis took him back to the scene allegedly for the purpose of inflicting additional injuries on him.  *Id.* Simkins was then transported back to Grandview, where Lewis allegedly continued to assault him, threatened to kill him, and threatened to "remove [Simkins's] organs."  *Id.*  Lewis also allegedly ordered Defendant McIntosh to give Simkins certain "drugs."  *Id.*

Simkins informed the medical staff (including Paul Levy, D.O.) that he did not wish to be treated at the facility for religious reasons.  *Id.*  McIntosh and Levy conferred with Lewis and

---

[4] Although Simkins's amended complaint refers to this individual as "Lewis," Simkins later reiterates that "at all times 'Lewis' [c]ould actually be Nicolas Br[ie]nza." Doc. 9 at PageID 145.  Therefore, while such individual is referred to as "Lewis" herein, the undersigned notes that the allegations against Lewis could potentially also refer to Brienza.

[5] "Ativan is used to treat anxiety, anxiety with depression[,] and insomnia."  *Parks v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-1530, 2014 WL 1493394, at *6 n.10 (N.D. Ohio Apr. 14, 2014).

allegedly decided to have Simkins involuntarily committed, *i.e.*, "pink slipp[ed]." *Id*. at PageID 128-29. During that time, Defendant Van Horne administered oxygen to Simkins despite his continued protestation to treatment, and he was subjected to imaging scans against his wishes, such as a CT scan (which included injecting Simkins with blue and yellow contrast dye) performed by Defendant Revine, and forty-one (41) x-ray scans conducted by Jenkins under McIntosh's supervision. *Id*. at PageID 129-31. Additionally, Revine and McIntosh prescribed and/or administered "drugs" to Simkins against his wishes. *Id*.

Thereafter, Simkins was returned to the emergency room where Defendant Spears, a Dayton Police Officer, "ma[d]e an appearance." *Id*. at PageID 132. Spears and Lewis allegedly threatened Simkins's life by pointing a firearm at the back of his head, and subsequently placed him under arrest. *Id*. Spears allegedly then punched Simkins several times in the right lower jaw while he was restrained (allegedly because he demanded an attorney and/or requested copies of paperwork). *Id*. at PageID 132-33. Defendant Carpenter was also alleged to be present during this time. *Id*. at PageID 133.

Simkins further alleges that Defendants Lewis, Spears and Marien threatened to murder him by "ripping [Simkins's] guts out" if he did not sign consent forms (either for consenting to medical treatment or a search). *Id*. at PageID 134. He was then subject to further medical procedures including a colonoscopy and an enema. *Id*. at PageID 134, 145. Simkins also alleges that Defendants Lewis, Spears, Jenkins and Marien conspired to perform these invasive medical procedures against his will. *Id*. Simkins additionally alleges that, while the enema was being administered, Lewis "rubb[ed] his crotch[,]" and both he and Spears threatened him with violence. *Id*. at PageID 145. Additionally, Simkins contends that Lewis, Spears, and Marien allegedly conspired to give him an overdose of a drug that stopped his heart three times, and then revived him with another drug to "traumatize" him, deprive his organs of oxygen, and facilitate memory

4

loss.  *Id*.  at PageID 135.  During this time, Marien also allegedly claimed to be Jenkins to confuse Simkins.  *Id*.

Simkins further alleges that, at the direction of McIntosh, Defendant Corneja -- with the alleged participation of Lewis, Spears, Marien, Jenkins, and Van Horne -- forcibly injected him with a number of drugs (including Haldol[6]) to induce lasting cognitive defects and to "wipe out" his memory.  *Id*. at PageID 134-35.  Simkins alleges that such treatment was performed under the authority or control of Defendants Grandview Hospital, Kettering Health Network, and EmCare.  *Id*. at 131-32.  Simkins further asserts that Defendant Janssen Pharmaceuticals, Inc. manufactured, marketed and made Haldol available for "off label use" despite its allegedly "dangerous side effects."  *Id*. at PageID 142.  Simkins also alleges that Haldol caused headaches, seizures or muscle spasms, memory loss, agitation, and the "bulk" of the medical injuries he alleges in this case.  *Id*.

Thereafter, Simkins was allegedly given several more CT scans by Dr. McIntosh to allegedly "poison" Simkins with radiation, "cover[-]up" the damage done to him, and traumatize him.  *Id*. at PageID 136-37.  Hours later, Simkins awoke naked and freezing in a hospital bed, feeling worse than at the time of his arrival.  *Id*. at PageID 137.  As Simkins attempted to put on his clothes,  McIntosh allegedly informed Simkins that he had an "air bubble" in his head, but he was free to go.  *Id*.  Simkins waited to leave until he felt a little better, and fell back asleep.  *Id*.

Defendant Fuentes -- allegedly acting under orders from Lewis and Spears -- thereafter informed Simkins that he had an infection in his head, but his vision was normal and he did not have a concussion.  *Id*.  Marien interviewed Simkins again alleging to be Jenkins, and Horne also conducted a "release interview."  *Id*. at PageID 139-40.  PageID 141.  Simkins alleges that he suffered a worsening cognitive state, and Horne allegedly drugged him and told him to "blow [his]

---

[6]  Haldol is an antipsychotic drug that is used "in treating psychoses, especially schizophrenia."  *Mills v. Rogers*, 457 U.S. 291, 294 n.1 (1982).

f_cking head off." *Id*. at PageID 141.  He further alleges that Horne's actions were in concert with Spears and Lewis. PageID 142.

On January 12, 2018 and February 2, 2018, Simpkins visited Horne for follow-up CT scans to seek information about his worsening cognitive state.  *Id*. at PageID 142-43.  He now claims such scans were performed against his wishes.  *Id*. at PageID 143.  Simkins also alleges Horne used Defendant Blake to review his CT scans, and Blake did so in violation of a no-contact order. *Id*.  at PageID 144.  Simkins alleges that on January 12, 2018, he was further traumatized when Van Horne allegedly tried to hug him and apologize.  *Id*.

**II.**

The Court first addresses the Rule 12(b)(6) motions to dismiss and the Rule 12(c) motions for judgement on the pleadings.  "The only difference between Rule 12(c) and Rule 12(b)(6) is the timing of the motion to dismiss." *Hunter v. Ohio Veterans Home,* 272 F.Supp.2d 692, 694 (N.D. Ohio 2003).  Thus, the standard for reviewing a Rule 12(c) motion for judgment on the pleadings is the same standard employed for reviewing a Rule 12(b)(6) motion to dismiss.  *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).  A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted."

To show grounds for relief, Fed. R. Civ. P. 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*. (citing *Twombly*, 550 U.S. at 555).  In determining a motion to dismiss, "courts 'are not bound to

accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.  In addition to well-pleaded allegations in the complaint, the Court may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," as well as documents attached to a defendant's motion to dismiss that are important to the plaintiff's claims or if referred to in the complaint. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted); *Composite Tech., L.L.C. v. Inoplast Composites S.A. de C.V.*, 925 F. Supp. 2d 868, 873 (S.D. Ohio 2013).

A claim is plausible where the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (alteration in original) (citing Fed. R. Civ. P. 8(a)(2)).

## III.

Here, in moving to dismiss his *pro se* claims, Defendants argue that Simkins: (1) misjoins the Grandview Foundation as a party; (2) fails to properly name Defendants Biehl and Brochu as parties to this action; (3) fails to allege factual allegations of wrongful conduct by each Defendant sufficient to state claims for relief against them; (4) fails to sufficiently allege facts that support

intentional infliction of emotional distress ("IIED") claims; and (5) possesses no private right of action to pursue claims under the criminal provisions of the Ohio Revised Code.

Simpkins moves to dismiss counterclaims asserted by Defendants Grandview Hospital and Kettering Health Network for defamation and tortious interference with a business relationship.

## A.    Misjoinder

When misjoinder occurs, pursuant to Fed. R. Civ. P. 21, "parties may be dropped or added by order of the court on motion of any party or its own initiative at any stage of the action and on such terms as are just." *Nali v. Mich. Dep't of Corr.,* No. 07-10831, 2007 WL 4465247, *3 (E.D. Mich. Dec. 18, 2007); *see also Arista Records, LLC v. Does 1–9,* No. 2:07-CV-961, 2008 WL 2982265, at *8 (S.D. Ohio July 29, 2008). A "district court has wide discretion in deciding whether to dismiss a party as a defendant," and may do so when the party's presence does not affect the issues being litigated. *Letherer v. Alger Grp., L.L.C.,* 328 F.3d 262, 267 (6th Cir. 2003), *overruled on other grounds*, *Blackburn v. Oaktree Capital Mgmt., LLC*, 511 F.3d 633 (6th Cir. 2008).

Although Simkins alludes to Defendant Grandview Foundation as being an entity synonymous with the Kettering Health Network, public records demonstrate otherwise. *See* doc. 9 at PageID 131-32, 142-43. Specifically, filings with the Ohio Secretary of State's office[7] -- and attached as an exhibit to Defendants' motion to dismiss (doc. 21-1) -- demonstrate that Defendant Grandview Foundation is a 501(c)(3) nonprofit entity operated exclusively for charitable and

---

[7] When considering a motion to dismiss under Fed. R. Civ. P. 12, "[i]n addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser–Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005). Information available through the Ohio Secretary of State is a public record that can be considered for deciding a motion to dismiss. *See E.E.O.C. v. Jeff Wyler Eastgate, Inc.*, No. 1:03-CV-662, 2006 WL 2785774, at *3 (S.D. Ohio Jan. 9, 2006); *see also Malibu Media, LLC v. Steiner*, 307 F.R.D. 470, 474 (S.D. Ohio 2015) (holding that "the Court may take judicial notice of [a] registration with the Ohio Secretary of State without converting [a Rule 12] motion into one for summary judgment, as the registration is a public record").

educational purposes, that "use[s] its assets exclusively to support osteopathic medical education programs at [Grandview Hospital] . . . and Kettering Medical Center." *Id.* Additionally, Simkins alleges no facts in his complaint to show that Defendant Grandview Foundation is an alter ego for Kettering Health Network. *See Trs. of Detroit Carpenters Fringe Benefit Funds v. Patrie Constr. Co.*, 618 F. App'x 246, 254 (6th Cir. 2015) ("[G]eneralized and conclusory allegations . . . are plainly insufficient to state a claim of alter ego status") (citation omitted).

Accordingly, Defendant Grandview Foundation's motion should be granted, and all claims against it should be dismissed. *See Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 682 (6th Cir. 1988) (citation omitted).

### B.     Naming Parties in a Complaint

With regard to Defendants Biehl and Brochu, the undersigned notes that Simkins's amended complaint does not name those Defendants as parties to this case. *See* doc. 9 at PageID 116-20. Because "[a]n amended complaint supersedes an earlier complaint for all purposes," and because neither Biehl nor Brochu are named as parties in the amended complaint, the undersigned recommends that these Defendants be dismissed from this case. *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013); *see also Milter v. Wright Med. Grp., Inc.*, No. 11-CV-11353, 2011 WL 4360024, at *1 (E.D. Mich. Sept. 19, 2011) (finding that defendants removed by plaintiff in his or her amended complaint no longer remained as parties to the action).

Even assuming, *arguendo*, that Simkins's amended complaint properly named Biehl and Brochu in the caption, he alleges no specific wrongful conduct on their part. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (concluding that although a *pro se* complaints are held to a less stringent standard, "courts should not have to guess at the nature of the claim asserted"). Accordingly, any claims against Defendants Biehl and Brochu should be dismissed.

## C. Section 1983 Claims[8]

"To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." *Green v. Throckmorton*, 681 F.3d 853, 859-60 (6th Cir. 2012) (citing *Waters v. City of Morristown, Tenn.*, 242 F.3d 353 (6th Cir. 2001)). Undoubtably, many named Defendants in this case are not traditional state actors, officials, or employees and, instead, are medical professionals, hospitals, and a pharmaceutical company. *See Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (stating that a plaintiff may not proceed under § 1983 against a private party); *Collyer v. Darling*, 98 F.3d 211, 231 (6th Cir. 1996) (stating that private medical professionals are not state actors).

If, however, private persons -- such as physicians -- act jointly with state officials to carry out a prohibited action, such persons act under the color of law for purposes of § 1983. *See Walker v. Joyce*, No. 3:15-CV-136, 2016 WL 8669788, at *2 (S.D. Ohio July 8, 2016) (citing *Tahfs*, 316 F.3d at 590). "Private persons may [also] . . . become state actors for purposes of § 1983 . . . if there is cooperation or concerted activity between the state and private actors[,]" *Dallas v. Holmes*, 137 F. App'x 746, 751 (6th Cir. 2005), such as when "a private party has conspired with state officials to violate constitutional right[.]" *Jackim v. Sam's East, Inc.*, 378 F. App'x 556, 563 (6th Cir. 2010) (citing *Cooper v. Parish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000)). A civil conspiracy

---

[8] Simkins cites to no specific Code provision under which he asserts a claim of conspiracy to deprive him of his constitutional rights. *See* doc. 9. While 42 U.S.C. § 1985 allows a plaintiff to bring such a claim, Simkins fails to state a claim under § 1985(1) because he sets forth no allegation regarding any conspiracy to prevent an officer from performing his or her duties. *See Moniz v. Cox*, 512 F. App'x 495, 500 n.2 (6th Cir. 2013). Similarly, no claim under § 1985(2) is stated because Simkins asserts no allegations of witness intimidation or the interference of due process in state courts. *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006). Finally, Simkins sets forth no claim under § 1985(3) because he alleges no class-based discrimination. *See Walker v. Joyce*, No. 3:15-CV-136, 2016 WL 8669788, at *2 n.3 (S.D. Ohio July 8, 2016). Accordingly, Simkins's conspiracy claim is construed under 42 U.S.C. § 1983.

claim consists of "an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985).

Nevertheless, individuals against whom civil rights claims are asserted under § 1983 are "only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see also Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012). As a result, claims alleging "violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). In addition, where conspiracy is alleged, "pleading requirements . . . are relatively strict" and such "claims must be pled with some degree of specificity[.]" *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). "[V]ague and conclusory allegations unsupported by material facts will not be sufficient to state . . . a [civil conspiracy] claim under § 1983." *Id.*

In asserting § 1983 claims, the mere "listing [of] names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery[.]" *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149 (1978)); *see also Frazier v. Mich.*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming dismissal where the plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights"). Further, simply "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct'" fails "'to satisfy [the] minimum standard that a complaint give each defendant fair notice of what the plaintiffs claim is and the ground upon which it rests[.]" *Marcilis*, 693 F.3d at 596 (citation and internal quotations omitted).

Simkins has plausibly stated § 1983 claims against Defendants Lewis, Wiley, Wolfe, and Spears, all of whom are alleged to be state actors. These claims arise, *inter alia*, from allegations that Defendants Lewis, Wiley, Wolfe, and Spears allegedly threatened the use of deadly force

11

against him. *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1192 (10th Cir. 2001) ("The display of weapons, and the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force" and "[s]uch a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time").

Simkins also plausibly alleges § 1983 claims against Lewis, Spears, Jenkins, and Marien relating to the alleged forced enema, which Simkins alleges as not only a search, but also rape. While the undersigned acknowledges that Jenkins and Marien are both private physicians, they can be treated as state actors in certain circumstances, such as those alleged by Simkins in his amended complaint. *See United States v. Booker*, 728 F.3d 535, 541 (6th Cir. 2013); *Booker v. LaPaglia*, 617 F. App'x 520, 524 (6th Cir. 2015).

Except for the foregoing, Simkins fails to allege instances of individual conduct sufficient to state § 1983 claims against any of the other Defendants -- namely, Defendants Blake, Corneja, Fuentes, Horne, Lane, Revine, and Van Horne -- and, therefore, such claims should be dismissed.

With regard to Defendant Brienza, Simkins makes only a conclusory assertion that Lewis could actually be Defendant Brienza. Absent further explanation or any specific factual allegations of unconstitutional conduct, Simkins fails to sufficiently plead a § 1983 or other claim against Brienza. *See Wells*, 891 F.2d at 594. Although Simkins argues that he should be permitted a minimal amount of discovery to determine Brienza's involvement, "there is no general right to discovery upon filing of the complaint." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003); *see also Mitchell v. McNeil,* 487 F.3d 374, 379 (6th Cir. 2007) ("[T]he very purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery") (citation omitted). Accordingly, all claims against Brienza should be dismissed.

Further, insofar as Simkins's amended complaint can be read to assert official capacity claims against a private entity whose employees can be treated as states actors in certain circumstances -- such as Defendants Grandview Hospital and Kettering Health Network -- such an entity cannot be held liable for the acts of employees or officials on a *respondeat superior* theory of recovery. *See Savoie v. Martin,* 673 F.3d 488, 494 (6th Cir. 2012) ("[E]every circuit to consider the issue has extended to private corporations as well the rule that a defendant cannot be held liable under section 1983 on a *respondeat superior* or vicarious liability basis" (internal quotations omitted)); *see also Johnson v. Karnes,* 398 F.3d 868, 877 (6th Cir. 2005). "Rather, an entity may be liable under § 1983 only if its official policies or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014). Because Simkins alleges no official policy or custom that resulted in his alleged constitutional injury, any such official capacity claims should also be dismissed.

### D.    Medical Assault and Battery Claims

Ohio courts have held that "[a] physician who treats a patient without consent commits a battery, even though the procedure is harmless or beneficial." *Estate of Leach v. Shapiro*, 469 N.E.2d 1047, 1051 (Ohio Ct. App. 1984). In circumstances where a patient expressly refuses treatment, even in an emergency situation, "any medical treatment is a battery." *Anderson v. St. Francis-St. George Hosp.*, 614 N.E.2d 841, 844 (Ohio Ct. App. 1992). Additionally, Ohio courts have held that providing a patient medical treatment "without [a] patient's consent constitutes an assault for which the patient may recover appropriate damages." *Lacey v. Laird*, 139 N.E.2d 25, 31 (Ohio 1956). Further, an affidavit of merit and expert testimony is not necessarily required to sufficiently plead claims of medical battery. *See Simpkins v. Grandview Hosp*., No. 3:18-CV-309, 2019 WL 3083349, at *6 (S.D. Ohio May 17, 2019), *report and recommendation adopted in part, rejected in part*, 2019 WL 3369440 (S.D. Ohio July 26, 2019).

The undersigned finds, in light of the foregoing, that Simkins sufficiently alleges battery claims against Defendants McIntosh, Jenkins, Van Horne, Marien, Revine, Corneja, and Horne for allegedly providing medical treatment without his consent.  Simkins sufficiently alleges assault and battery claims against Grandview Hospital and Kettering Health Network by application of *respondeat superior.  See Anderson*, 614 N.E.2d at 844 ("[U]nder the doctrine of *respondeat superior*, any person who controls the physician in a principal-agent relationship is liable for unlawful acts by the physician that are within the scope of that relationship").  Accordingly, the motions to dismiss medical claims filed by these Defendants should be denied.

Further, Simkins sufficiently alleges assault and battery tort claims against Lewis, Wiley, Wolfe, and Spears.  However, the undersigned finds that Simkins fails to allege sufficient facts to state assault and battery claims against the other remaining Defendants and, therefore, such claims should be dismissed.

### E.    Intentional Infliction of Emotional Distress

An intentional infliction of emotional distress ("IIED") claim under Ohio law requires proof that:

> (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.

*Shugart v. Ocwen Loan Servicing, LLC*, 747 F.Supp.2d 938, 944-45 (S.D. Ohio 2010) (citations omitted).

Simkins's allegations against Lewis (beating him unconscious; holding a gun to his head and threatening to kill him; participating with Spears, Jenkins, and Marien in giving him an enema

without his consent; and participating in drugging him to stop his heart three times), Wiley and

Wolfe (dragging him to a bridge and threatening to throw him off), Spears (pointing a gun at his

head; punching him multiple times in the jaw while restraining him; participating in giving him an

enema; and participating in stopping his heart), Jenkins (participating in giving him an enema),

and Marien (participating in giving him an enema and participating in stopping his heart) are

sufficient to state claims of intentional infliction of emotional distress at this early stage of the

litigation.

Based on the foregoing, the motions to dismiss filed by Jenkins and Marien in this regard

should be denied, and the IIED claims against Lewis, Wiley, Wolfe, and Spears should also remain

pending. As Simkins fails to assert specific allegations of conceivably outrageous conduct by other

Defendants, any further intentional infliction of emotional distress claims should be dismissed.

### F. Claims Arising from Ohio Criminal Statutes

The Ohio Supreme Court has held that "[c]riminal statutes generally do not create a private

cause of action but give rise only to a right of prosecution by the state." *State ex rel. Bailey v. Ohio

Parole Bd.*, 97 N.E.3d 433, 437 (Ohio 2017). Thus, insofar as Simkins seeks to enforce criminal

provisions of the Ohio Revised Code (*e.g.*, rape and assault), all such claims should be dismissed.

### G. Off-Label Marketing Claim

The Food, Drug, and Cosmetic Act ("FDCA") regulates, *inter alia*, prescription drugs.

*Kelley v. Insys Therapeutics, Inc.*, No. 3:18-CV-1774, 2019 WL 329600, at *2 (N.D. Ohio Jan. 25,

2019). The concept of the off-label use of prescription drugs originates from the FDCA. *McDaniel

v. Upsher-Smith Pharms., Inc.*, 220 F.Supp.3d 707, 711 (W.D. Tenn. 2016) (citations omitted).

Accordingly, "[t]he distinction between on-label and off-label use -- and, hence, between on-label

and off-label promotion -- exists only by virtue of the federal regulatory scheme," and such claims

have no state law equivalent. *Aaron v. Medtronic, Inc.*, 209 F.Supp.3d 994, 1011 (S.D. Ohio 2016); *see also Kelley*, 2019 WL 329600 at *2-3.

Further, the FDCA provides that "all ... proceedings for the enforcement, or to restrain violations, [of the FDCA] shall be by and in the name of the United States." 21 U.S.C. § 337(a). Private enforcement of violations of the FDCA is barred by § 337(a) because those claims would "usurp the [Food and Drug Administration's] regulatory oversight role for policing purported violations of" the statutes and regulations it has exclusive authority to administer. *Dawson v. Medtronic, Inc.*, No. 3:13-CV-663-JFA, 2013 WL 4048850, at *7 (D.S.C. Aug. 9, 2013). Accordingly, "[t]he FDCA leaves no doubt that it is the Federal Government rather than private litigants who is authorized to file suit for noncompliance with its substantive provisions." *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 579 (6th Cir. 2013) (quoting *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 349 n.4 (2001) (internal quotations omitted)). Thus, "[i]f [a] claim would not exist in the absence of the FDCA, it is impliedly preempted." *Id.* (citing *Buckman*, 531 U.S. at 353). Stated another way, no private right of action exists for plaintiff's seeking to enforce the FDCA. *See id*.

Simkins's only allegation with regard to Defendant Janssen Pharmaceuticals, Inc. is that Janssen allegedly marketed (or promoted) Haldol for off-label use. Such a claim is preempted by the FDCA and, accordingly, the undersigned recommends that Janssen's motion for judgment on the pleadings be granted.

### H. Counterclaims

Simkins moves to dismiss the counterclaims against him alleging defamation and tortious interference with a business relationship. *See* doc. 20; *see also* doc. 51. Defendants' counterclaims are based on a number of Simkins's posts on internet platforms, LinkedIn, the Nextdoor Neighborhood application, and a petition he filed on change.org. Doc. 20 at PageID 201-08.

Under Ohio law, to establish a defamation claim, a plaintiff must prove:

> (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement.

*Croce v. New York Times Co.*, 345 F. Supp. 3d 961, 973-74 (S.D. Ohio 2018), *aff'd*, 930 F.3d 787 (6th Cir. 2019).  "To determine if a statement is defamatory it must first be a statement of fact and not of opinion."  *Alahverdian v. Grebinski*, No. 3:13-CV-00132, 2014 WL 2048190, at *5-6 (S.D. Ohio May 19, 2014).  Further, the "words must be of such a nature that courts can presume as a matter of law that they tend to degrade or disgrace the person of whom they are written or spoken, or hold him up to public hatred, contempt or scorn."  *Moore v. P.W. Pub.*, 209 N.E.2d 412, 415 (Ohio 1965).

In Ohio, claims of defamation are divided into two categories -- defamation *per se* and defamation *per quod*.  *Murray v. Knight-Ridder, Inc.*, No. 2-BE-45, 2004 WL 333250, at *15 (Ohio Ct. App. 2004).  Defamation *per se* occurs when a statement is defamatory on its face.  *Helfrich v. Allstate Ins. Co.,* No. 12AP-559, 2013 WL 5450931, at *27 (Ohio Ct. App. 2013) (citations omitted).  "In order for a statement to constitute defamation *per se*, it must consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, impute … some loathsome or contagious disease which excludes one from society or tend[s] … to injure one in his trade or occupation."  *Mc Wreath v. Cortland Bank,* No. 2010-T-23, 2012 WL 2522933, at *43 (Ohio Ct. App. 2012) (internal quotations omitted). For claims of defamation *per se*, damages need not be pled nor provided, and will be presumed.  *Strussion v. Akron Beacon Journal Pub. Co.,* No. 20833, 2002 WL 1371166, at *21 (Ohio Ct. App. 2002).  Defamation *per quod,* on the other hand, occurs where a statement is defamatory through interpretation or innuendo. *Helfrich,* 2013 WL 5450931, at *27.

17

Tortious interference with a business relationship "occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another." *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1294 (Ohio 1995). However, where "the predominant subject matter of [the wrongful] action is the alleged damage to [claimant's] reputation and adverse effects on their business or profession caused by the circulation of allegedly false information[,]" such claims are properly brought as defamation actions. *Ra v. Ohio Attorney Gen.'s Office*, No. 19AP-533, 2020 WL 1686485, at *23 (Ohio Ct. App. 2020) (citing *Breno v. Mentor*, No. 81861, 2003 WL 21757504, at *12 (Ohio Ct. App. 2003) ("where a claim is expressly premised upon a communication of false information, it is properly characterized as a disguised defamation claim")). Stated another way, if absent the allegedly false internet posts there would be no basis for Defendants' claim of tortious interference with business relationships, such a claim is properly characterized as defamation. "sound[s] in defamation." *See id.*

Defendants' allegations -- that Simkins stated in internet posts, *inter alia*, that medical staff "cover-up" rape, torture, and beatings; physicians participate in stealing organs; physicians falsify records; as well as his filing a national petition "to raise awareness to stop the rape and torture occurring at Grandview Medical Center in Dayton, Ohio" -- are sufficient to state a claim for defamation at this early stage of the litigation. *See Sky v. Van Der Westhuizen*, 136 N.E.3d 820, 831 (Ohio Ct. App. 2019), *appeal not allowed*, 131 N.E.3d 75 (allegations of false reviews posted online were sufficient to allege a claim for defamation *per se*); *see also Forinash v. Weber*, 87 N.E.3d 759, 760 (Ohio Ct. App. 2017) (concluding that a Facebook post stating a defendant engaged in criminal behavior was sufficient to allege a claim for defamation *per se*). However, absent such allegedly false internet posts, there is no basis for Defendants' tortious interference claim. *See Ra*, 2020 WL 1686485, at *23. Accordingly, such claims "sound in defamation." *Id.*

18

Based on the foregoing, Simkins's motion to dismiss should be denied in part with regard to Defendants Grandview Hospital and Kettering Health Network's defamation counterclaim, and granted in part with regard to Defendants' claim for tortious interference with a business relationship.

## IV.

The Court next addresses Simkins request for additional time to conduct discovery (doc. 83) in response to the motion to dismiss, or in the alternative motion for summary judgment, filed by Defendants Horne and Fuentes (doc. 78). Although Defendants attach affidavits in support of their motion, the undersigned declines, at this early juncture in the litigation, to consider such extrinsic evidence and, for the reasons set forth above, construes Defendants' motion in this regard solely as a motion to dismiss. Accordingly, Simkins's request for additional time to conduct discovery should be denied as moot. Additionally, Defendants' motion for summary judgment should be denied without prejudice at this time with the understanding the same can be renewed following the taking of additional discovery.

## V.

For the foregoing reasons, the undersigned **RECOMMENDS** that: (1) the motions to dismiss filed by Plaintiff and Defendants Dayton Osteopathic Hospital (d/b/a Grandview Hospital), Kettering Adventist Healthcare (d/b/a Kettering Health Network), Corneja, Van Horne, Jenkins, Marien, and Revine, (docs. 21, 28) be **GRANTED IN PART AND DENIED IN PART**; (2) the motions to dismiss filed by Defendants Grandview Foundation, Brochu, and Brienza, be **GRANTED** (docs. 21, 24); (3) the motion for judgment on the pleadings filed by Defendant Janssen Pharmaceuticals, Inc. be **GRANTED** (doc. 70); (4) the motion to dismiss filed by Defendants Horne and Fuentes be **GRANTED IN PART AND DENIED IN PART** (and

Defendants' motion for summary judgment, in the alternative, be **DENIED WITHOUT PREJUDICE**) (doc. 78).

Additionally, the Court **DENIES AS MOOT** Plaintiff's motion for additional time to conduct discovery (doc. 83).

Date:   July 23, 2020                                    s/Michael J. Newman
                                                              Michael J. Newman
                                                              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).