THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

RICHARD L. SIMKINS, III,

    Plaintiff,

    v.

CHRISTOPHER
MCINTOSH, *et al.*,

    Defendants.

:

Case No. 3:19-cv-227

Judge Walter H. Rice

---

DECISION AND ENTRY SUSTAINING MOTIONS TO DISMISS OF
DEFENDANTS NICHOLAS BRIENZA, JOSEPH WILEY, CRAIG WOLF,
ANDREW LANE, AND JOSHUA SPEARS (DOC. #189), DAYTON
OSTEOPATHIC HOSPITAL D/B/A GRANDVIEW HOSPITAL,
KETTERING ADVENTIST HEALTHCARE D/B/A KETTERING HEALTH
NETWORK (N/K/A KETTERING HEALTH), LOREDEL E. CORNEJA,
NICOLE VAN HORNE, DAVID JENKINS, SHAWN LOUIS MAREIN,
AND SHANNON RAVINE (DOC. #201), AND STEFANIE K. HORNE,
M.D. (DOC. #202); PLAINTIFF RICHARD L. SIMKINS, III'S FIRST
AMENDED COMPLAINT (DOC. #9) IS DISMISSED WITH PREJUDICE
PURSUANT TO FED.R.CIV.P. 41 FOR FAILURE TO PROSECUTE;
KETTERING DEFENDANTS' COUNTERCLAIM (DOC. # 20) IS
DISMISSED WITHOUT PREJUDICE TO REFILING IN A STATE COURT
OF COMPETENT JURISDICTION; JUDGMENT TO ENTER IN FAVOR
OF DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

---

Before the Court are the Motions to Dismiss for Failure to Prosecute under

Federal Rules of Civil Procedure 37(b) and 41(b) of Defendants Nicholas Brienza,

Joseph Wiley, Craig Wolf, Andrew Lane, and Joshua Spears ("Dayton

Defendants") (Doc. #189), Dayton Osteopathic Hospital d/b/a Grandview Hospital,

Kettering Adventist Healthcare d/b/a Kettering Health Network (n/k/a Kettering

Health), Loredel E. Corneja, Nicole Van Horne, David Jenkins, Shawn Louis Marein,

and Shannon Ravine ("Kettering Defendants") (Doc. #201), and Stefanie K. Horne,

M.D. (Doc. #202). Also before the Court is Plaintiff Richard L. Simkins, III's

Memoranda *Contra* and Declaration of Compliance (Doc. #208) in response to this

Court's February 15, 2024, Entry, which required "Plaintiff to provide any and all

presently un-responded to discovery requests filed by any and all remaining

Defendants, until the close of business on **Wednesday, February 28, 2024**." (Doc.

#197, PAGEID 1947 (emphasis in original)). For the reasons set forth below,

Defendants' Motions are SUSTAINED, all of Plaintiff's remaining claims against

Defendants are DISMISSED WITH PREJUDICE, and Kettering Defendants'

remaining counterclaim against Plaintiff is DISMISSED WITHOUT PREJUDICE to

refiling in a state court of competent jurisdiction.

## I. Factual Background and Procedural History

The history of this case and its predecessor, *Simkins v. Grandview Hosp.*,

No. 3:18-cv-309, have been set forth extensively elsewhere. (Decisions and

Entries, No. 3:18-cv-309, Doc. # 144, 162; Decision and Entry, Doc. #95). The

Court incorporates those discussions by reference. For present purposes, liberally

construing Plaintiff's claims, which were originally filed against twenty Defendants

(Report, Doc. #90, PAGEID 639-40), the Court notes that those claims arise out of

injuries suffered September 13-14, 2017, and from alleged minor incidents on

January 12 and February 2, 2018. (*Id.* at PAGEID 640-43). On September 8,

2020, this Court sustained in part and overruled various motions to dismiss.

(Entry, Doc. #95, PAGEID 689, 694, 699 n.7, citing Report, Doc. #90, PAGEID

648-49, 651, 651-52, 656). The Court issued additional Entries (Docs. #107,

112, 113, 117), dismissing additional parties and claims, leaving only the following

claims as of February 2, 2022:

1. Plaintiff's 42 U.S.C. § 1983 claims against Brienza, Wolf, Wiley, Spears, Jenkins and Marien;

2. Plaintiff's medical assault and battery claims against Horne and the Kettering Defendants;

3. Plaintiff's Intentional Infliction of Emotional Distress claim against Brienza, Lewis, Wiley, Wolfe, Spears, and Marien; and

4. Grandview Hospital and Kettering Health's defamation counterclaim against Plaintiff.

After the February 2, 2022, Entry (Doc. #117), Plaintiff should have begun

discovery and trial preparation in earnest. He did not. After a status conference

with Magistrate Judge Peter B. Silvain, Jr., Horne and Dayton Defendants

propounded upon Plaintiff Interrogatories and Requests for Production of

Documents ("RFPD") on March 17 and 25, 2022, respectively. (Doc. #202,

PAGEID 1973, citing First RFPD, Doc. #202, PAGEID 1997; J. Musto Decl., Doc.

#205, PAGEID 2098, ¶ 3). Included in both sets of requests were releases that

Plaintiff was to sign to authorize disclosure of medical and employment records to

Defendants. (*Id.*). On April 13, 2022, Plaintiff sent responses to both

Interrogatories and RFPDs back to counsel for Horne. (First Disc. Resp., Doc.

3

#202, PAGEID 1999-2020). Horne's counsel concluded that several of the responses to the Interrogatories and RFPD were insufficient, and asked that Plaintiff supplement responses and produce documents within fourteen days of receipt of the letter. Counsel asked that Plaintiff produce medical records and protected health information ("PHI") within fourteen days of entering into a Protective Order. (Apr. 21, 2022, Corr., Doc. #202, PAGEID 2021-26). Despite raising objections in the Interrogatories, at no point did Plaintiff move for a Rule 26(c) protective order or seek relief from his response and production obligations.

Horne agreed to Plaintiff's request for an additional fourteen days to supplement, making his responses and production due on May 12, 2022. However, Plaintiff did not respond, on May 12 or any other date, to the Interrogatories or RFPDs aside from sending to Horne's counsel "a picture of what appears to be a large stack of mail purported to be in your office area and self-defined as the 'Trauma Box[.]'" (Jun. 3, 2022, Corr., Doc. #202, PAGEID 2028-29). On Horne's motion, the Magistrate Judge set a discovery conference for July 6, 2022. (Motion, Doc. #140; Jun. 17, 2022 Notation Order). On July 6, the Court entered the Protective Order jointly proposed by Horne, Dayton Defendants and Kettering Defendants, noting that their proposed order "closely follows the stipulated protective order available on the United States District Court for the Southern District of Ohio's website." (Order Granting Protective Order, Doc. #142, PAGEID 940, citing Proposed Protective Order, Doc. #127; Protective Order, Doc. #143). Subsequently, Horne requested that Plaintiff supplement his

responses and sign releases for his medical records by July 29, 2022. (Jul. 8, 2022, Corr., Doc. #202, PAGEID 2030).

Despite the Protective Order being in place, Plaintiff still refused to sign the releases, ostensibly because Kettering Defendants had refused to disclose a relevant document. (Jul. 12, 2022, Corr., Doc. #202, PAGEID 2037). Horne's counsel informed Plaintiff that, unless he signed the releases, Horne would file a motion to compel and move to dismiss the First Amended Complaint for failure to prosecute. (*Id*.). Plaintiff refused to provide any information, and Horne filed that motion, with the prayer for dismissal, on August 2, 2022. (Motion to Compel, Doc. #145, PAGEID 966; Aug. 2, 2022, Corr., Doc. #202, PAGEID 2043).

Two weeks later, after being told by Plaintiff "that he would not be providing responses to discovery until the Court rules on his summary judgment motion and objections to initial disclosures[,]" Dayton Defendants also filed a Motion to Compel. (Doc. #151, PAGEID 995). On January 23, 2023, the Magistrate Judge overruled both Motions without prejudice to renewal. In doing so, he ordered that Plaintiff respond to Horne and Dayton Defendants' discovery requests within thirty days of receiving copies of the discovery requests via postal mail. (Order, Doc. #159, PAGEID 1024, ¶¶ 3-6). After Horne re-sent materials via postal mail but Plaintiff still failed to respond, Horne filed a Motion to Dismiss for failure to prosecute on March 1, 2023. (Doc. #163). The Court overruled this Motion, but ordered Plaintiff to respond to Horne's First Discovery Requests, including providing medical authorizations no later than January 31, 2024. (Order

and Report and Recommendations, Doc. #191, PAGEID 1927, *adopted at* Decision and Entry, Doc. #195). Plaintiff did not do so. Indeed, at all relevant times from when he sent his first deficient responses in April 2022 until January 31, 2024, there is no record of Plaintiff producing documents or ameliorating the deficiencies in his Interrogatory responses.

While Horne's Motion to Dismiss was pending, Dayton Defendants filed a renewed Motion to Compel on March 20, 2023. (Doc. #165). Therein, Dayton Defendants detailed how, after their initial Motion to Compel was denied without prejudice, they reissued to Plaintiff the original Interrogatories, RFPDs, and record release authorizations on January 13, 2023. (J. Musto Aff., Doc. #165-1, PAGEID 1203, ¶ 13). After Plaintiff sent discovery responses with "no actual information provided, merely a number of irrelevant objections[,]" on February 21, 2023, counsel for Dayton Defendants sent Plaintiff a letter identifying the deficiencies and giving Plaintiff until March 10, 2023, to correct and supplement. Plaintiff did not respond. (*Id*. at ¶¶ 15-17; Feb. 21, 2023 Corr., Doc. #165-13, PAGEID 1362). The Magistrate Judge sustained this Motion on October 23, 2023, ordering Plaintiff "to respond to all of the Dayton Defendants' discovery requests identified in the Motion to Compel on or before **November 24, 2023**." (Order, Doc. #187, PAGEID 1554 (emphasis in original)). The Magistrate Judge warned "that his failure to comply with this Order may result in the imposition of sanctions, including but not limited to the dismissal of this action in whole or in part." (*Id*. at PAGEID 1555, citing FED.R.CIV.P. 37(b)(2)).

After Plaintiff once again failed to respond meaningfully, Dayton Defendants filed the instant Motion to Dismiss on December 14, 2023. Therein, Dayton Defendants claim that Plaintiff's only action in response to the Magistrate Judge's October 2023 Order was to send Interrogatory responses that contained almost no relevant and responsive information. Plaintiff's only document production was two news articles (one a series of screenshots, the other a link to the article). (Doc. #189, PAGEID 1572-73, citing J. Musto Aff., Doc. #189-1, PAGEID 1579, ¶ 20; Nov. 14, 2023, Corr., Docs. #189-10, 189-11, 189-12). Plaintiff did not file a memorandum *contra* or move for an extension of time to respond. Consequently, on January 25, 2024, this Court issued an Order to Show Cause, requiring Plaintiff to show by February 8, 2024, why his claims against Dayton Defendants should not be dismissed for failure to prosecute. (Doc. #192, PAGEID 1932-33). The Court concluded that Plaintiff had consistently shown "obstinance and failure to participate in this case. The Court has no confidence that further informal attempts . . . to obtain discovery or motion practice to compel production will be effective." (*Id*. at PAGEID 1932). In so doing, the Court articulated that dismissal was the only sanction that could be effective.

However, mindful of the severity of dismissal with prejudice as sanction and of Plaintiff's *pro se* status (Doc. #192, PAGEID 1933, quoting *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988)), the Court gave Plaintiff an additional fourteen days "Failure to show cause within that time *will* result in: (1) Dayton Defendants' Motion being sustained,(2) Plaintiffs claims against Dayton Defendants

being dismissed WITH PREJUDICE to refiling in any court, and (3) final judgment

ultimately entering in favor of Dayton Defendants and against Plaintiff." (*Id*. at

PAGEID 1933 (emphasis in original)).

On February 7, 2024, Plaintiff responded, asserting that he "has participated

in Discovery in a meaningful way and to the best of the Plaintiff's ability[.]" He

went on to "state[] that the Plaintiff has turned over all the available requested

information within Plaintiff's possession and has also signed and delivered both by

email and in person medical release forms . . . on [February 7]." (Response, Doc.

#193, PAGEID 1934). That same day, Plaintiff, claiming that he had only recently

become aware of the Court's December 27, 2023, Order, moved to extend his

deadline to provide documents to Horne to February 19, 2024. (Motion, Doc.

#194, PAGEID 1936).

Also on February 7, Dayton Defendants informed Plaintiff verbally and via

email that Plaintiff still had not provided employment releases or responded to the

Interrogatories or RFPDs—namely, Plaintiff had not provided a list of medical

providers who treated him for his injuries, despite the request having been pending

for almost two years at that point. Plaintiff still did not respond with the requested

information. (Notice, Doc. #196, PAGEID 1940;. Musto Aff., Doc. #196-1,

PAGEID 1943, 1944, ¶¶ 4, 6-8; Feb. 7, 2024, Corr., Doc. #196-2, PAGEID

1945). On February 15, 2024, the Court, "[t]aking Plaintiff at his word, at this

point," gave him one final chance to comply with the Court's Orders and the

Defendants' repeated requests for responses. (Order, Doc. #197, PAGEID 1947).

8

The Court gave Plaintiff until February 28, 2024, to produce "any and all un-responded to discovery requests . . . including medical releases," and asked that Defendants notify the Court if and when full production was made. (*Id*.) (emphasis in original). "Should Plaintiff not provide the requested discovery, the undersigned will direct the Magistrate Judge to hold a brief hearing, pursuant to a re-issued Show Cause Order directing Plaintiff to show cause why the captioned matter should not be dismissed for want of prosecution." (*Id*.). Again, the Court was indicating that no sanction less severe than dismissal was appropriate.

On March 13, 2024, the Magistrate Judge set a status conference for March 20, 2024. (Order, Doc. #200, PAGEID 1961). In the interim, Kettering Defendants moved to dismiss for lack of prosecution. They argued that despite numerous attempts privately and with the Magistrate Judge to move discovery forward, Plaintiff still had not signed the medical records releases or responded meaningfully to the Interrogatories or RFPDs. (Doc. #201, PAGEID 1963-65). Kettering Defendants argue that Plaintiff's conduct "demonstrates that not only is Plaintiff intentionally disregarding the Court's orders, but he is also doing so with no regard whatsoever for the effect of his actions on these proceedings." (*Id*. at PAGEID 1967). They assert that they have been prejudiced because the case duration means that witnesses are no longer available, while they remain under a continuing requirement to disclose the captioned case to their insurer as active litigation. (*Id*. at PAGEID 1967-68). Thus, Kettering Defendants claim that "although dismissal is a sanction of last resort, it is warranted by Plaintiff's

9

egregious and willful conduct that was motivated by bad faith and caused extreme delay to these proceedings." (*Id.* at PAGEID 1969).

On March 20, 2024, the Magistrate Judge conducted still another conference, which constituted the Order to Show Cause to which the undersigned referred in the February 15, 2024, Entry. During that conference, Defendants argued that Plaintiff had not complied with the undersigned's February 15, 2024, Order to provide "any and all discovery," while Plaintiff rejoined that he had complied "to the best of his ability." (Mar. 20, 2024, Minute Entry). The Magistrate Judge gave until March 22, 2024, for Horne to file a renewed motion for dismissal, and for Dayton Defendants and Kettering Defendants, to file supplemental memoranda with affidavits and supporting materials detailing Plaintiff's supposed non-compliance. (*Id.*).[1]

In her new motion, Horne stated that "[o]n February 27, 2024, Plaintiff provided Defendant with several blank, signed and dated medical authorization forms with a cover letter instructing Defendant to fill in Plaintiff's date of birth, social security number, and any other necessary information into the blank medical authorizations." Yet, Plaintiff did not produce additional documents or rectify his allegedly deficient responses to the Interrogatories or RFPDs. (Doc. #202, PAGEID

---

[1] Thereafter, on March 22, 2024, the undersigned withdrew the reference of the case to the Magistrate Judge. (Decision and Entry, Doc. #206). He did so not out of any dissatisfaction with the way the Magistrate Judge had handled the case; rather, the undersigned concluded that the interests of justice and judicial economy would be best served by ruling directly on the Motions to Dismiss, rather than waiting for the Magistrate Judge to write a Report and Recommendations and to receive any objections thereto from the parties.

1976). Horne argues that Plaintiff's refusal to prosecute this case is willful, given "several responses from Plaintiff wherein he explicitly refuses to produce medical authorizations to Defendants, even going so far as to state: 'I'm not giving you any permissions.'" (*Id*. at PAGEID 1978, quoting Doc. #202, PAGEID 2043). Dismissal with prejudice is particularly appropriate here, Horne asserts, because what little discovery has been produced demonstrates that Horne was never in contact with, much less cared for, Plaintiff between September 13 and 14, 2017, when most of his injuries allegedly occurred. (*Id*. at PAGEID 1979, citing S. Horne Aff., Doc. #78, PAGEID 590-91, ¶¶ 3-6). Finally, Horne asserts that Plaintiff failed to comply with this Court's February 28, 2024, deadline, and that failure is also grounds for dismissal. (*Id*. at PAGEID 1979-80, citing FED.R.CIV.P. 37(b)(2)(A), 41(b)).

In their supplemental filing, Kettering Defendants echoed the arguments in Horne's Motion, and argued that Plaintiff lied to the Court in his statement on February 7, 2024, "that he had fully complied with the various discovery requests and orders 'to the best of [his] ability[,]'" because Plaintiff "produce[d] additional information three weeks later on February 28, 2024." (T. Pepper Decl., Doc. #204-1, PAGEID 2093, ¶¶ 8-9). Yet even those responses "still fell woefully short of satisfying Plaintiff's discovery obligations." (*Id*. at PAGEID 2094, ¶ 10). In their filing, Dayton Defendants noted that even after providing the medical records releases on March 15, 2024:

> Plaintiff has still failed to provide the documents in response to the records requests sent to him in March of 2022. He has not provided any medical records, bills, or any other documentation to substantiate his claims or alleged damages. His actions have paralyzed this case for years and prevented the parties from being able to move forward to take depositions.

(Dayton Defendants Supp. Memo., Doc. #205, PAGEID 2095; *accord*: Mar. 13-14,

2024, Corr., Doc. #205-7, PAGEID 2160 (Dayton Defendants' counsel directing

Plaintiff to "provide the responses to the Requests for Production of Documents"

and Plaintiff asking counsel to "list the documents you would like produced.")).

On April 9, 2024, Plaintiff filed his combined memorandum *contra*

Defendants' Motions and response to the Court's February 2024 Order. Therein,

Plaintiff argues that because he "has turned over all the available requested

information within Plaintiff's possession[,]" and counsel for Defendants can use the

releases to obtain any other information they might need to defend against his

claims, he "has COMPLIED with the ORDER set out in DOC#197[.]" (Pltf. Resp.,

Doc. #208, PAGEID 2182 (emphasis in original)). Plaintiff states that he is willing

to provide any documents that the Defendants specifically request, but asserts that

Defendants have not given "a specific request that outlines the information or

documentation that the Defendants claim has been withheld in non-compliance[.]"

(*Id*. at PAGEID 2183).

This matter is now ripe for decision.[2]

_____

[2] While Horne, Dayton Defendants, and Kettering Defendants filed replies in support of their motions (Docs. #209, 210, and 211, respectively), those memoranda were almost entirely recapitulations of the arguments raised in their Motions.

12

## II.   Legal Standards

Involuntary dismissal for failure to prosecute is expressly provided for as a

sanction for discovery violations, FED.R.CIV.P. 37(b)(2)(A)(v), or on motion by a

defendant.  FED.R.CIV.P. 41(b).  Moreover, courts have consistently held that:

The authority of a court to dismiss *sua sponte* for lack of prosecution
has generally been considered an "inherent power," governed not by
rule or statute but by the control necessarily vested in courts to
manage their own affairs so as to achieve the orderly and expeditious
disposition of cases.

*Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962); *accord*: *Carpenter v. City of*

*Flint*, 723 F.3d 700, 704 (6th Cir. 2013) ("It is well settled that a district court has

the authority to dismiss *sua sponte* a lawsuit for failure to prosecute.").

Nonetheless, "the dismissal of a claim for failure to prosecute is a harsh sanction

which the court should order only in extreme situations showing a clear record of

contumacious conduct by the plaintiff." *Schafer v. City of Defiance Police Dep't*,

529 F.3d 731, 736 (6th Cir. 2008) (internal quotation marks and citation omitted).

The sanction is particularly harsh because involuntary dismissal is with prejudice.

*See* FED.R.CIV.P. 41(b) (A dismissal for failure to prosecute "operates as an

adjudication on the merits.").

When deciding whether to dismiss a case for failure to prosecute under Rule

37(b)(2), Rule 41(b), or the Court's inherent power[3], the United States Court of

Appeals for the Sixth Circuit instructs district courts to consider whether:

_____

[3] "[W]e note, as other circuits have found, that the factors considered when reviewing a dismissal
under Rule 41(b), Rule 37(b), or a court's inherent power are largely the same." *Coleman v. Am.
Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994).

(1) The party's failure is due to willfulness, bad faith, or fault;

(2) The adversary was prejudiced by the dismissed party's conduct;

(3) The dismissed party was warned that failure to cooperate could lead to dismissal; and

(4) Less drastic sanctions were imposed or considered before dismissal was ordered.

*Mager v. Wisconsin Central Ltd.*, 924 F.3d 831, 837 (6th Cir. 2019), quoting

*United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002). "Although no one

factor is dispositive, dismissal is proper if the record demonstrates delay or

contumacious conduct." *Reyes*, 307 F.3d at 458. "Contumacious conduct refers

to behavior that is perverse in resisting authority and stubbornly disobedient."

*Carpenter*, 723 F.3d at 704-05 (internal quotation marks and citation omitted).

**III.    Analysis**

**A.    Willfulness, Bad Faith, or Fault**

It is axiomatic that a plaintiff, even one proceeding *pro se*, must actively and

vigorously prosecute his case.  As Horne detailed in her Motion, Plaintiff has failed

to do so.  Contrary to Plaintiff's assertion that the Defendants had only provided

vague statements that his document production was incomplete, as far back as

April 2022, Horne's counsel identified specific issues with each deficient

Interrogatory or RFPD response.  (Doc. #202, PAGEID 2021-26).  In June 2022,

counsel distinguished between the requested documents that would be subject to

protective order and those that were not—and thus, were subject to immediate

production.  (*Id*. at PAGEID 2028).  Yet, after two years and numerous informal

warnings by Horne's counsel and by the Magistrate Judge, few documents have been produced. (*See, e.g.*, *id*. at PAGEID 2037, "[Horne and counsel] have been trying to work cooperatively with you, waited until the protective order was filed, and the Court has likewise instructed you on the issue."). Dayton and Kettering Defendants fared no better. (Doc. #165-1, PAGEID 1203, ¶¶ 13-17; Doc. #201, PAGEID 1967 n.3). Plaintiff expressly informed counsel for Horne in August 2022 that, despite the entry of a Protective Order and the Magistrate Judge informing him of his discovery obligations, he would not provide medical releases to Defendants. (Doc. #202, PAGEID 2043). Then, despite numerous entreaties from counsel and this Court, he refused to provide those releases for an additional eighteen months. Even when faced with multiple explicit warnings that he was risking dismissal, Plaintiff still made no effort to provide the documents necessary for Defendants to evaluate Plaintiff's claims and formulate their defenses.

Plaintiff's assertion that he is willing to disclose any document that Defendants specifically request (Doc. #208, PAGEID 2183), is unavailing for two reasons. *First*, it misapprehends how discovery and federal litigation in general work. RFPDs "must describe with reasonable particularity each item or category of items to be inspected[.]" FED.R.CIV.P. 34(b)(1)(A). An examination of the RFPDs propounded by Horne (Doc. #202, PAGEID 1992-96), show that the requests are specific, limited, and reasonably calculated to lead to the discovery of admissible evidence. Importantly, Plaintiff has never lodged an objection for vagueness or overbreadth with the Court. Nor has he ever moved for a Rule 26(c) protective

order with respect to the requests. Thus, it is Plaintiff's obligation to find and produce the relevant, responsive, non-privileged documents. Plaintiff's position— that Defendants must request a specific document that they may not even know exists—is unfounded, and Plaintiff cites no authority for that position.

*Second*, and more importantly, Plaintiff has lost credibility with the Court, and the Court has no reason to think that he will cooperate and actively prosecute now. Defendants, the Magistrate Judge, and the undersigned have patiently instructed Plaintiff on what he needed to produce in discovery and, both informally and through the threat of sanctions, attempted to move the case forward. Yet, more than two years after the initial discovery responses were due, Plaintiff still has not come close to providing Defendants with the information which they requested and to which they are legally entitled. Rather, Plaintiff has defied Court orders and resisted every overture by the Court and Defendants. In December 2023, the Court was not prepared to find "a clear record of contumacious conduct" based on "Plaintiff's statements that he will comply and release his records[.]" (Doc. #191, PAGEID 1927). However, Plaintiff did not abide by his statement, and his continued refusal to complete the Interrogatories and respond to RFPDs compels the Court to conclude that he never will. Plaintiff's failure is but the latest event in a multi-year pattern of obstinance and litigation delays that were willful and undertaken in bad faith. Thus, the first *Mager* factor weighs in favor of dismissal.

### B. Prejudice

Prejudice is shown when a defendant "waste[s] time, money, and effort in pursuit of cooperation which [plaintiff] was legally obligated to provide." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997). Since at least May 22, 2020, Plaintiff and the Court have been aware of Horne's position that she had no interaction with Plaintiff on September 13 and 14, 2017, when Plaintiff's injuries at Grandview Hospital allegedly occurred; indeed, Horne averred that she did not treat Plaintiff until he visited her office in January and February 2018. (Doc. #78, PAGEID 591-92, ¶¶ 5-12, 14). Horne propounded the March 2022 Interrogatories and RFPDs in part to determine whether she is properly in the case. Plaintiff's failure to respond to those requests means that Horne has had to spend years as a Defendant despite: (a) no seeming connection to the bulk of injuries allegedly suffered by Plaintiff, and (b) Plaintiff not answering questions or producing documents that might shed light on why he thinks Horne has contributed to his injuries. It is difficult for the Court to envision how a party could have been more prejudiced than Horne.

Also, both Kettering Defendants and Dayton Defendants "were materially prejudiced by Plaintiff's delay, not only because Defendants were unable to secure the information requested, but they were required to waste time and effort in pursuit of cooperation which Plaintiff was legally obligated to provide[,]" (Doc. #189, PAGEID 1574-75), and because "numerous witnesses, and indeed even some of the parties, have moved out of the area and are no longer easily

accessible. Further, memories and recollections of the events at issue will only get more and more attenuated the longer this matter goes on." (Doc. #201, PAGEID 1968). Additionally, Defendants cannot evaluate the case in terms of possible exposure to damages, or even liability. Finally, Kettering Defendants have continued to incur legal fees, and "this case must be reported to various licensing boards and insurance companies and is therefore continuing to cause them challenges[.]" (*Id*. at PAGEID 1967). The Court concludes that both Dayton Defendants and Kettering Defendants have been significantly prejudiced, and that there is no reason to think that Plaintiff is able or willing to cure that prejudice. Consequently, the second *Mager* factor weighs heavily in favor of dismissal.

## C. Notice

While the Court is mindful that orders of involuntary dismissal are often reversed "when the district courts did not put the derelict parties on notice that further noncompliance would result in dismissal[,]" *Harris*, 844 F.3d at 1256 (collecting cases), it is confident that Plaintiff received ample notice. Plaintiff was expressly warned four times in three months that failing to respond fully to discovery would result in dismissal. The Court's February 15, 2024, Entry warned Plaintiff that failure to comply would result in the Court ordering him "to show cause why the captioned matter should not be dismissed for want of prosecution." (Doc. #197, PAGEID 1947). The Magistrate Judge reinforced that warning on March 20, 2024, when he set a deadline for Plaintiff to respond to the February 2024 Entry. (Mar. 20, 2024, Minute Entry). Additionally, Plaintiff had been

18

warned on December 27, 2023, and January 25, 2024, that failing to demonstrate how he had prosecuted his claims against Horne and Dayton Defendants would result in dismissal of those claims with prejudice. (Doc. #191, PAGEID 1927; Order, Doc. #192, PAGEID 1932-33). Plaintiff was on sufficient notice to satisfy the third *Mager* factor.

### D. Failure of Lesser Measures

The Court took great pains to be mindful of Plaintiff's *pro se* status and gave him every opportunity to obtain a merits adjudication of his claims. Despite Plaintiff's refusal in Summer 2022 to respond or produce documents, on January 12. 2023, the Magistrate Judge overruled multiple Motions to Compel (Docs. #145, 151) without prejudice, choosing instead to require Plaintiff to respond to all requests within thirty days after receiving Defendants' Interrogatories and RFPDs via postal mail. (Order, Doc. #159, PAGEID 1024, ¶¶ 3-6). After refusing to respond to their reissued discovery, Dayton Defendants again moved to compel on March 20, 2023. (Doc. #165). This time, on October 23, 2023, the Court sustained the Motion and ordered Plaintiff "to respond to all of the Dayton Defendants' discovery requests identified in the Motion to Compel on or before **November 24, 2023.**" (Doc. #187, PAGEID 1554 (emphasis in original)). Finally, on December 27, 2023, the Court overruled Horne's initial Motion to Dismiss, in favor of giving Plaintiff one final opportunity to respond to discovery, despite the Magistrate Judge "ha[ving] admonished Plaintiff regarding his participation—or lack thereof—in discovery." (Doc. #191, PAGEID 1926; Doc. #195).

While the Court never imposed a lesser Rule 37 sanction for failing to obey a court order, FED.R.CIV.P. 37(b)(2)(A)(i-iii), or required payment of costs or attorney fees, it is not required to do so prior to dismissing a complaint as a sanction: "We have never held that a district court is without power to dismiss a complaint, as the first and only sanction, and we are loath to require the district court to incant a litany of lesser available sanctions." *Fharmacy Records v. Nassar*, 379 F. App'x 522, 524 (6th Cir. 2010), quoting *Schafer*, 529 F.3d at 738 (cleaned up). Moreover, any decision not to impose a lesser sanction did not prejudice Plaintiff. Rather, on those three occasions discussed *supra*, the Court offered Plaintiff a "get out of jail free card"—that producing the documents would restore him to good standing in the litigation, despite his prior delays and intransigence. Finally, the Court's warnings of dismissal on December 27, 2023, and January 25, 2024, were tacit acknowledgements that no other sanction would be effective. Thus, despite no express language discussing why lesser sanctions were inappropriate, the case record weighs modestly in favor of the fourth *Mager* factor being met.

In sum, three of the four factors weigh heavily in favor of dismissal and one factor modestly in favor. The Court, in light of Plaintiff's repeated willful failures to advance this litigation and the prejudice that Defendants have suffered, concludes that no lesser sanction than dismissal with prejudice is appropriate. Consequently, Defendants' respective Motions to Dismiss are sustained.

### E. Kettering Defendants' Counterclaim

As discussed above, Kettering Defendants' defamation counterclaim against Plaintiff (Doc. #20, PAGEID 205-06, ¶¶ 19-32), remains pending but arises solely under state law, meaning that all federal claims in the litigation will be resolved by the entry of dismissal. The resolution of all federal claims and "values of judicial economy, convenience, fairness, and comity[,]" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988), lead this Court to conclude that the counterclaim properly belongs in state court. *See also Utd. Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."). Thus, the Court declines to exercise continued supplemental jurisdiction and dismisses Kettering Defendants' defamation counterclaim without prejudice to refiling in a state court of competent jurisdiction.

### IV. Conclusion

For the foregoing reasons, the Motions to Dismiss for Failure to Prosecute of Dayton Defendants (Doc. #189), Kettering Defendants (Doc. #201), and Horne (Doc. #202) are SUSTAINED. Plaintiffs' claims against the Defendants are DISMISSED WITH PREJUDICE, and judgment shall enter in favor of the Defendants and against Plaintiff. Kettering Defendants' counterclaim against Plaintiff is DISMISSED WITHOUT PREJUDICE to refiling in a state court of competent jurisdiction.

The captioned case is hereby ordered terminated upon the docket records of

the United States District Court for the Southern District of Ohio, Western Division,

at Dayton.

IT IS SO ORDERED.

Walter H. Rice
WALTER H. RICE, JUDGE

May 7, 2024                                   UNITED STATES DISTRICT COURT

22